LARSON, Respondent, vs. FISHER and others, Appellants.

*May 10—June 15, 1951.*

356

For the appellants there was a brief by *Everson, Ryan, Whitney & O'Melia* of Green Bay, and oral argument by *John C. Whitney.*

For the respondent there was a brief by *Evrard, Evrard, Duffy, Holman & Faulds* of Green Bay, and oral argument by *John P. Duffy.*

MARTIN, J.    Plaintiff, a married man and the father of three minor children, is a resident of the city of Sheboygan, and the defendants operated a wholesale fish business in the city of Green Bay.    On August 1, 1947, the plaintiff and defendants entered into a written contract of employment

whereby the defendants agreed to employ the plaintiff as a salesman for a period of one year from that date, at a weekly salary of $100 from which he was to deduct his traveling expenses. In anticipation of the contract, plaintiff had worked for defendants for a week or two before August 1, 1947.

There is a sharp dispute in the testimony as to why, on August 14, 1947, the plaintiff and the defendants severed relationship. Paragraph 6 of the complaint alleges:

"That the plaintiff fulfilled all the conditions of the agreement and fully complied with said terms, but that the defendants unjustly and without cause, on August 14, 1947, informed the plaintiff that he no longer was employed by the company and refused to pay him according to the terms of the agreement and requested that he no longer worked for them, although plaintiff had fully complied with all the terms of the agreement and was able and willing to perform the conditions of employment."

Plaintiff testified that on the above date he was wrongfully discharged, being told by the defendant Lawrence Fisher that he was no salesman and that he was through. Plaintiff's witness, William Paige, testified that he was told by Lawrence Fisher that the latter had fired Larson. This testimony was corroborated by one Mrs. Borowitz, a daughter of Paige. Defendants denied that plaintiff had been discharged.

On August 18, 1947, plaintiff commenced working as a truck driver for Motor Transport Company at Sheboygan for whom he had previously worked for a period of approximately eight years. He quit this job after three weeks and went to work for May Steel Company and was employed there at the time of the trial.

On September 4, 1947, Attorney Francis Evrard of the firm of Evrard & Evrard, Green Bay, Wisconsin, wrote the following letter to the defendants:

"I have been retained by Mr. Clayton Larson regarding a contract entered into by your company with Mr. Larson

pertaining to employment for a period of one year commencing August 1, 1947, at the weekly salary of $100. Mr. Larson tells me that after being employed for a short time, he was released and you refused to carry out the agreement as executed. I would appreciate your contacting me immediately regarding this contract; otherwise, I have been instructed to commence action for its enforcement. I will await your reply in this matter."

On September 5, 1947, defendant Lawrence Fisher wrote the following longhand reply to Attorney Evrard:

"On your inquiry concerning Mr. Larson I would like to inform you that he has not been released ,from his job. We are wondering where Mr. Larson is for the past three weeks. He has not showed up for work for the last three weeks and has left his accounts flat without notice. Mr. Larson has this agreement to work but we do not see how we can pay him as we agreed to if he do not show up on the job to execute our agreement. We would like to inform you that Mr. Larson has not been fired from his job but he certainly has given us the impression that he has quit."

The jury had an opportunity to observe the witnesses and their demeanor and found that the plaintiff had been wrongfully discharged on August 14, 1947. There is ample evidence in the record to sustain this finding. Plaintiff and defendants approved of the form of the verdict as submitted.

Appellants now base their entire argument on the contents of the letter of September 5, 1947, and state in their brief:

"We submit that the only sensible meaning which Fisher's letter could have to reasonably intelligent persons familiar with ordinary business transactions, considered in the light of the letter to which it was an immediate spontaneous response, by a layman, would be that this is a recognition of the fact that the contract still exists, that the plaintiff has not been discharged, and that therefore employment for the plaintiff is still open—or at the very worst, that this constitutes an offer of re-employment on the same terms as though of the original contract."

Appellants rely on the following from Anno. 72 A. L. R. 1054:

"As a general rule an employee who has been wrongfully discharged is bound to accept the employer's offer of re-employment in the same or a similar position in order to reduce the damages, where such offer may be accepted without prejudice to the rights of the employee under the original contract of employment."

They cite several cases in support of this rule, one of them being *Lemoine v. Alkan* (1916), 33 Philippine 162, 168. The court stated therein:

"We are aware that it has been held that, when a contract of employment has once been broken by the employer by a wrongful discharge of the employee, and *that status has been recognized by both parties, the employee is not obliged to do anything more under the original contract;* that, it having been broken voluntarily by the employer, his employee is no longer under any obligation to comply with the terms thereof. But, notwithstanding this, we believe that, under such circumstances, the employee should accept an offer even under the old contract, *as long as it does not involve a renunciation of any right already accrued, . . ."* (Italics ours.)

The first sentence of the letter of September 5, 1947, reads: "On your inquiry concerning Mr. Larson *I would like to inform you that he has not been released from his job."*

There is no recognition in this letter of the real status of the parties. The above sentence denies the claimed discharge. There cannot be an offer of re-employment when there is no recognition that the employment was terminated. The tenor of the instrument is that the plaintiff walked off the job and the defendant was at a loss to explain his absence.

This letter was written approximately a month after Larson quit, according to Lawrence Fisher's version, and after he had received a letter from Larson's attorney charging him with having discharged Larson. It is clear from the cases referred to in Anno. 72 A. L. R. 1049, that there must

be an offer of re-employment that does not alter the previous contract.

The letter also states: "Mr. Larson has this agreement to work, but we do not see how we can pay him as we agreed to if he do not show up on the job to execute our agreement."

It seems clear that defendant felt plaintiff had no right to compensation for a period of some three weeks. Unless the offer of re-employment is made so that the employee does not suffer any loss of rights by accepting it, it is not such an offer of re-employment that the employee is bound to accept or otherwise have it held against him in mitigation of damages.

It is our position that the letter could not have constituted an "offer of continuing employment" because the jury found that the plaintiff had been wrongfully discharged and such finding is amply supported by the evidence; and it is not an offer in good faith to re-employ plaintiff in the position from which he had been wrongfully discharged.

Appellants assert that the plaintiff sat back and waited for the passage of time until the contract term had completely expired before commencing suit.

The law is well settled that an employee who has been wrongfully discharged by his employer before the expiration of the contract period may wait until after such time, and then sue and recover the amount which he would have earned under such contract, less what he might have, in the meantime, earned elsewhere. *Winkler v. Racine Wagon & Carriage Co.* (1898), 99 Wis. 184, 188, 74 N. W. 793; *Gauf v. Milwaukee Athletic Club* (1912), 151 Wis. 333, 334, 139 N. W. 207.

The interpretation given these letters by the jury, as shown by its answer to the question in the special verdict, is fair and is sustained by the evidence.

*By the Court.*—Judgment affirmed.