McDONALD, Respondent, v. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, Appellant. [Two appeals.]

*February 28—April 9, 1968.*

For the appellant there were briefs by *Godfrey, Trump & Davidson,* attorneys, and *Richard R. Robinson* of counsel, all of Milwaukee, and oral argument by *Mr. Robinson.*

For the respondent there was a brief by *A. M. Frederickson,* attorney, and *Anthony J. Melo* of counsel, both of Milwaukee, and oral argument by *Mr. Melo.*

WILKIE, J. Three issues are raised on the railroad's appeal. They are:

1. Did the trial court have jurisdiction to hear the case?

2. Did the trial court err in striking the affirmative defense asserted by the railroad that McDonald had not exhausted the grievance procedure set forth in the labor contract?

3. Should the railroad be permitted to show nonexhaustion of this procedure by way of mitigating McDonald's damages?

Preliminary to the consideration of these issues it should be noted that no question is raised about the jury's finding that the discharge of McDonald was wrongful. Our subsequent discussion starts with the assumption that the jury verdict has resolved this hotly contested issue.

### *Jurisdiction.*

On the first appeal in this case, in *McDonald v. Chicago, M., St. P. & P. R. R.,*[2] this court relied on *Moore v. Illinois Central R. R.,*[3] *Transcontinental Air v. Koppal,*[4] and several federal [5] and state cases,[6] to hold that a discharged employee who accepts dismissal as final is not

---

[2] *Id.*

[3] (1941), 312 U. S. 630, 61 Sup. Ct. 754, 85 L. Ed. 1089.

[4] (1953), 345 U. S. 653, 73 Sup. Ct. 906, 97 L. Ed. 1325.

[5] *McDonald, supra,* at footnote 25.

[6] *McDonald, supra,* at footnote 28.

precluded by the Railway Labor Act [7] from bringing an action for wrongful discharge in a state court.

The holding of the first *McDonald Case* in effect reiterated the rule that a discharged railroad employee has the option of seeking reinstatement and back pay by challenging the validity of his discharge under the auspices of the national railroad adjustment board or of accepting the dismissal as final and bringing a civil suit for damages resulting from the unlawful discharge. In the former situation, the adjustment board has exclusive jurisdiction; in the latter situation, the employee may seek recourse in the state courts.

The touchstone of the limited state court jurisdiction in this area is a discharge and more importantly, an acceptance of that discharge as final. When an employee refuses to accept the discharge as final, exclusive jurisdiction to adjudicate the dispute is in the adjustment board. [8]

The appellant railroad's first argument on this appeal is that McDonald has not accepted the discharge as final and the state court was consequently without jurisdiction to entertain the case. This contention is without merit. Appellant's sole tenet in pursuing this proposition is that respondent's complaint sought lost wages and retirement benefits from the date of discharge through what would have been his retirement date in 1969, and that this "belies" respondent's acceptance of his discharge as final. This argument is fatally defective on two grounds. First, the tip-off that one is not accepting a discharge as final and the action which would truly belie such acceptance, would be the seeking of reinstatement. This the re-

---

[7] 45 U. S. Code, p. 462, sec. 151 *et seq.*

[8] *Ferro v. Railway Express Agency, Inc.* (2d Cir. 1961), 296 Fed. 2d 847; *Hundley v. Illinois Central R. R.* (6th Cir. 1959), 272 Fed. 2d 752; *Walters v. Chicago & N. W. R. R.* (7th Cir. 1954), 216 Fed. 2d 332; *see Newman v. Baltimore & Ohio R. R.* (3d Cir. 1951), 191 Fed. 2d 560.

spondent has never done. His complaint stated that the discharge was final and did not make any inconsistent allegations that he sought to be reinstated. The mere fact that respondent sought to recover the value of his lost wages and retirement benefits certainly is not tantamount to a request for reinstatement. These requests were only employed as a yardstick for measuring the damages that respondent suffered from the wrongful discharge.

Secondly, the allegation in plaintiff's complaint that the discharge was accepted as final was not denied by the railroad in its answer. Nor was plaintiff's claim in this regard ever disputed during the trial, on motions to set aside the verdict, or on motion for a new trial. Therefore, the defendant is attempting to raise this issue for the first time on appeal. This court has frequently said that it will not countenance the raising of issues for the first time on appeal.[9] While this rule is "one of administration and not of power,"[10] there is no compelling reason to depart from the general practice in this case.

### Appellant's Affirmative Defense.

Paragraph 8 of the appellant's answer alleged as an affirmative defense that the plaintiff, following his discharge, failed to follow the internal grievance procedure outlined in Rule 18 of the labor contract to which his union was a signatory. The trial court, ruling on motion by the plaintiff, ordered that the affirmative defense be stricken on the ground that Rule 18 is only applicable when reinstatement is sought and that when a party elects to sue for damages, noncompliance with the rule is no longer material or relevant.

[9] *Gebhardt Bros., Inc., v. Brimmel* (1966), 31 Wis. 2d 581, 583, 143 N. W. 2d 479; *State v. Conway* (1967), 34 Wis. 2d 76, 83, 148 N. W. 2d 721.

[10] *Culligan, Inc., v. Rheaume* (1954), 268 Wis. 298, 310, 67 N. W. 2d 279.

Rule 18, in pertinent part, provides that:

"An employe who has been disciplined or dismissed . . . shall be given a fair and impartial hearing before the officer designated by the Railroad Company to handle such matters, provided that request for hearing is made in writing to the Superintendent within ten (10) days from date of advice of discipline or complaint. [Presumably this would also mean within ten days of dismissal although the rule does not expressly so state.] The hearing shall be held . . . and decision . . . rendered within ten (10) days from date the hearing is completed."

The rule goes on to prescribe appeal machinery within the grievance structure.

In the first *McDonald Case* this court noted that the employee's complaint did not state what grievance procedure was available under the contract, or that the plaintiff had exhausted that procedure. The court did hold however that *"if it is to be claimed that some provision of the collective-bargaining contract cuts off a wrongfully discharged employee's right of action for damages for breach of contract,* that is a matter of affirmative defense, and the facts must be pleaded by defendant." [11] (Emphasis ours.)

The contract provision the court had in mind by this language was a mandatory provision calling for resort to a grievance procedure, the failure to follow which would result in an absolute bar to plaintiff's action. In the instant case we do not consider Rule 18 mandatory. Thus that rule was not the type of contract provision contemplated by the first *McDonald Case* to be asserted as an affirmative defense. The court's holding in the first *McDonald Case* was repeated in *Cheese v. Afram Brothers Co.*[12] In *Cheese* the plaintiff sued his former employer for damages resulting from a wrongful discharge. Although the case turned on different grounds, our court made this observation regarding exhaustion of remedies.

---

[11] *McDonald, supra,* at pages 217, 218.
[12] (1966), 32 Wis. 2d 320, 145 N. W. 2d 716.

"Although the employer also urges that the complaint against it is defective because of the failure to allege an exhaustion of remedies, we note that the case in which this court held that there was an obligation to allege and prove exhaustion of remedies in an action against an employer was one in which the employee sought *reinstatement*. *Widuk v. John Oster Mfg. Co.* (1962), 17 Wis. (2d) 367, 374, 117 N. W. (2d) 245. However, in *McDonald v. Chicago, M., St. P. & P. R. Co.* (1964), 25 Wis. (2d) 205, 217, 130 N. W. (2d) 794, this court distinguished between an action for damages against an employer and one for reinstatement. In the same case, the court also distinguished between a damage suit for wrongful expulsion against the employer as opposed to such an action against the union. In this suit for damages, under our ruling in the *McDonald Case*, Afram Brothers is not entitled to rely on Mr. Cheese's failure to allege an exhaustion of remedies. Instead, the employer must plead such failure as an affirmative defense." [13]

Neither the first *McDonald Case* nor *Cheese* held that in a state action the railroad can plead the failure to comply with any provision calling for the nonmandatory use of a contract provision specifying a grievance procedure as an affirmative defense to that action but only such provision as is deemed mandatory. In the first *McDonald Case* the cause was before this court on demurrer and the court did not have before it the precise wording of Rule 18. Hence the holding could be only in terms of the general principle involved and not on the basis of the exact wording of the rule. The trial court was correct in striking the railroad's alleged affirmative defense that the plaintiff's action was barred by his failure to use and exhaust the grievance procedure contained in Rule 18 of the contract governing hours of service, rates of pay, and working conditions of employees in the maintenance of way department of the railroad.

[13] *Id.* at page 325.

*Mitigation of Damages.*

Plaintiff's cause of action springs from the rights plaintiff has secured under the contract. Although exhaustion of the grievance procedure is not mandatory under Rule 18, the railroad was entitled to show that this failure to resort to that procedure could mitigate plaintiff's damages in that if that procedure had been followed the railroad might have reinstated plaintiff, thus reducing plaintiff's wage loss. True, the railroad, after the trial court's decision striking its affirmative defense as previously discussed, by way of mitigation of plaintiff's damages did not offer any evidence as to plaintiff's failure to exhaust the grievance procedure. The railroad may have deemed the trial court's opinion supporting its action striking the affirmative defense, that "the noncompliance with that rule is immaterial and irrelevant in this case" in effect barred an assertion by the railroad of plaintiff's noncompliance with Rule 18 even for the limited purpose of mitigating plaintiff's damages.

Apparently the jury arrived at its damage award for the plaintiff in the sum of $23,341.26, as the trial court states, by allowing $11,000 as the total gross income "which plaintiff earned in money and reasonable value of room and board during the 91 months since his discharge to the trial date."

The evidence shows that, as the trial court states, plaintiff "made no effort to find work, other than returning to work and live on the family farm; which was what he had done before he was employed by defendant."

But the jury did not have the opportunity to consider plaintiff's failure to exhaust the grievance procedure in further possible mitigation of plaintiff's damages. We conclude that under sec. 251.09, Stats., a new trial should be ordered in the interest of justice on the single issue of damages.

*Value of Lost Retirement Benefits.*

By cross appeal the plaintiff-respondent seeks a review of the trial court's decision "whereby the Plaintiff was limited to the proof of damages and loss of wages on the part of the Plaintiff to the date of the trial herein, and whereby Plaintiff was denied the right to prove loss of wages during the life expectancy of the Plaintiff and denied the right to prove and recover for the loss of Plaintiff's retirement benefits for the term of his life expectancy."

The law is well settled that an employee who has been wrongfully discharged by his employer may sue and recover the amount which he would have earned under that contract less what he earned or might reasonably have earned, in the meantime, while working elsewhere.[14] This recovery in the instant case is subject to such further mitigation as may be credited to the railroad by the jury for plaintiff's failure to exhaust grievance procedures provided for in the contract.

The loss that McDonald sustained from the wrongful discharge not only includes his loss of wages up until the time of trial and thereafter up to the time of retirement, but also includes the loss of any possible retirement benefits that would have inured to him under the contract had he not been prevented from working until retirement age. We think that the jurors should have heard the testimony regarding plaintiff's retirement benefits and life expectancy and that they should have been allowed to consider this evidence in determining the total loss sustained by the wrongful discharge.

We think plaintiff made a proper offer of proof under which the district manager of the railroad retirement board testified that the value of the plaintiff's retirement benefits (at the time of trial when plaintiff was sixty-two and at voluntary retirement age) was approximately

[14] *Larson v. Fisher* (1951), 259 Wis. 355, 360, 48 N. W. 2d 502, and cases cited therein.

$128 per month. This together with plaintiff's life expectancy should have gone to the jury. At the new trial plaintiff should be permitted to attempt to prove the loss of retirement benefits.

*By the Court.*—Judgment reversed, and cause remanded for a new trial consistent with this opinion. No costs on this appeal.