ANCRAFT PRODUCTS COMPANY, Plaintiff-Appellee, *v.* UNIVERSAL OIL PRODUCTS COMPANY, INC., *et al.*, Defendants-Appellants.

First District (3rd Division)    No. 79-2434

Opinion filed September 30, 1981.

Rooks, Pitts, Fullagar and Poust, of Chicago (Alan S. Ganz and Terrence E. Kiwala, of counsel), for appellants.

Henehan, Donovan & Isaacson, Ltd., of Chicago (Edward V. Donovan, Jr., and James J. McManus, of counsel), for appellee.

Mr. PRESIDING JUSTICE RIZZI delivered the opinion of the court:

This case involves a dispute over the construction of a contract between plaintiff, Ancraft Products Co., and defendant, Universal Oil Products Company, Inc. (UOP, Inc.). According to the contract, plaintiff was to build three impregnating machines for defendant. In its complaint, plaintiff alleged that it performed the work and design services required for the machines and delivered them on schedule, and that defendant owes $59,348.06 towards the total contract price. Defendant admitted that it had not paid the $59,348.06, but denied that it owed that amount. The gravamen of the dispute is that plaintiff characterizes the contract as a fixed fee contract, whereas defendant contends that it is a cost-plus contract with an upset price. The $59,348.06 represents the difference between the amount paid by defendant on the basis of time and materials, and the amount alleged by plaintiff to be the fixed price of the contract. The trial court entered judgment in favor of plaintiff but denied an award of interest on this sum from the date it became due until the date of the judgment. On appeal, defendant argues that the trial court erred in entering judgment in favor of plaintiff. Plaintiff cross-appeals, contending that the court should have ordered the payment of interest on the unpaid balance of the contract. Since we conclude that plaintiff was not entitled to the $59,348.06, we reverse.

The negotiations for the contract took place between E. W. Nyberg of Ancraft and D. A. Shepard of Hoyer-Schlesinger-Turner, Inc. (HST), an engineering firm acting as defendant's purchasing agent. Shepard died before the trial.

In April 1973, plaintiff sent HST a letter setting forth a quotation for building the three impregnating machines which defendant sought to acquire. The essential terms were:

"The price for the machine with the plastic valves and counter clockwise rotation would be $110,000.00."

"The price for the machines with the stainless steel valves parts and clockwise rotation would be $145,000.00 each."

"Engineering for the stainless steel machines with clockwise rotation would be approximately $25,000.00."

"Labor charges would be based on $13.00/Hr. Engineering charges would be based on $15.00/Hr. Materials would be billed at cost plus 15%."

"Payouts are to be made semimonthly with Ancraft providing copies of all invoices for purchased materials and accounting for labor and engineering hours worked."

"Should your order be cancelled before December 30, 1973 there would be a cancellation charge of $70,000.00 plus any monies due on purchased items received or to be received, labor and engineering."

Following further negotiations, HST sent plaintiff a letter dated May 2 which mirrored in most respects the terms contained in plaintiff's letter. The only major addition was a paragraph inserted after the price and hourly rate provisions which stated:

"However the cost of stainless and plastic Impregnating Machines shall not exceed the above listed prices, nor shall the engineering exceed the $25,000.00 limit unless there is a change in scope and a written change order issued."

Defendant's purchase order, signed by Shepard and dated May 7, 1973, reads:

| "1 | Stainless Steel Impregnation Machine | | $145,000 |
|---|---|---|---|
| 2 | Plastic Impregnation Machines | $110,000 | $220,000 |
| | Approximate Engineering Cost for Item 559601 | | $ 25,000 |
| | Approximate Total Purchase Order Price, no crating included: | | $390,000 |

Hourly Rates will be as follows:

| Labor | $13.00 hour |
|---|---|
| Engineering | $15.00 hour |
| Material at cost plus 15% | |

Invoices will be semi-monthly * * *.

Should the order be cancelled on or before December 30, 1973, there will be a cancellation charge of $70,000.00 plus

monies due on purchased items received or cancellation charges on items to be received, labor and engineering charges."

The purchase order concluded with the following statement: "This confirms Letter of Intent dated May 2, 1973, to Mr. Ernest W. Nyberg."

On September 7, HST sent plaintiff a letter requesting semimonthly status reports. The letter further stated:

"We also wish to confirm our verbal statement that no changes increasing the cost of these machines will be effective until such changes have been approved by myself and a written Change Order issued to your firm. Under no circumstance will the total Purchase Order price be exceeded."

Five changes were made in defendant's original order, and Shepard signed the purchase order sheets reflecting the changes and showing an increase of $70,900 in the total cost of the machines.

Plaintiff billed defendant semimonthly on the basis of engineering charges, labor and materials (at cost plus 15%). Defendant paid all invoices except for the final one involving the disputed $59,348.06. The trial court determined that plaintiff was entitled to receive this sum but that plaintiff was not entitled to interest for the interval between July 26, 1974, when the amount became due, and the date of the entry of judgment.

Defendant argues that the trial court erred in determining that the contract was a fixed fee contract rather than a cost plus contract with a maximum price. We agree.

■■■ In construing a contract, the primary objective is to determine and give effect to the intentions of the parties (*In re Estate of Klinker* (1979), 80 Ill. App. 3d 28, 30, 399 N.E.2d 299, 301) at the time they entered into the contract. (*Cedar Park Cemetery Association, Inc. v. Village of Calumet Park* (1947), 398 Ill. 324, 335, 75 N.E.2d 874, 880.) If the contract terms are unambiguous, then the parties' intent must be determined solely from the language of the contract. (*Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 364, 247 N.E.2d 886, 888.) If, however, the contract language is ambiguous, extrinsic evidence as to facts surrounding formation of the contract may be considered in determining the parties' intent. (*La Throp v. Bell Federal Savings & Loan Association* (1977), 68 Ill. 2d 375, 384, 370 N.E.2d 188, 192; *Farwell Construction Co. v. Ticktin* (1980), 84 Ill. App. 3d 791, 796, 405 N.E.2d 1051, 1056.) The issue of whether or not an ambiguity exists is a question of law to be determined by the court. (*Heifner v. Board of Education* (1975), 32 Ill. App. 3d 83, 88, 335 N.E.2d 600, 604; *Storybook Homes, Inc. v. Carlson* (1974), 19 Ill. App. 3d 579, 582, 312 N.E.2d 27, 29.) Since construction of a contract presents an issue of law in the absence of any material questions of fact, the reviewing court may independently construe the contract (*Rymer v. Kendall Col-*

*lege* (1978), 64 Ill. App. 3d 355, 359, 380 N.E.2d 1089, 1092), unrestrained by the trial court's judgment (*Farwell Construction Co. v. Ticktin* (1980), 84 Ill. App. 3d 791, 797, 405 N.E.2d 1051, 1056).

■■ We conclude that the terms of the contract involved here are ambiguous. Although a fixed price is given for the cost of each machine, the cost of engineering is shown as an approximate figure, and the total price shown is denoted "Approximate Total Purchase Order Price." The ambiguity is heightened by the inclusion of hourly rates for engineering and labor, with materials to be billed at cost plus 15%, which suggests that the contract was a cost plus contract and that the price given for each machine was a maximum cost and not a fixed fee.

■■ Plaintiff argues that if the contract is ambiguous, it should be construed most strongly against defendant since defendant, through its agent, drafted the contract. While it is generally true that a contract should be most strongly construed against its author (*Cedar Park Cemetery Association, Inc. v. Village of Calumet Park* (1947), 398 Ill. 324, 333, 75 N.E.2d 874, 879; *Harris v. American General Finance Corp.* (1977), 54 Ill. App. 3d 835, 840, 368 N.E.2d 1099, 1103), that principle is not controlling here. The contract sets forth the agreement between the parties in almost the same form and language as that contained in plaintiff's letter submitting its quotation. Although the final contract was prepared by HST on one of defendant's purchase order forms, it merely reflects the essential terms as they were propounded by plaintiff. Under these circumstances, any ambiguity will not be construed against defendant solely because it prepared the final contract.

The correspondence regarding preliminary negotiations, the contract and its five modifications and the semimonthly invoices sent by plaintiff to defendant were admitted into evidence without objection. Included in these exhibits was HST's letter of intent. Reference is made to this letter at the end of the contract: "This confirms Letter of Intent dated May 2, 1973, to Mr. Ernest W. Nyberg." In that letter, HST stated that costs for the machines "shall not exceed" the price shown unless there was a change in scope accompanied by a written change order. We agree with defendant that this demonstrates that a maximum price rather than a set price was intended, since a fixed rate could not be exceeded. Furthermore, the parties agreed to various contract modifications while the machines were being built, and in its correspondence HST repeated that increased costs of the machine would not be effective until any changes had been approved in writing and that "[u]nder no circumstances [would] the total Purchase Order price be exceeded." These letters evince that defendant consistently intended for the price set in the contract to be an upset price.

The fact that the contract is a cost-plus contract with an upset price is further demonstrated by the billing procedure used by the parties. In

accordance with the contract, invoices based on hourly rates for engineering and labor, with materials billed at cost plus 15%, were sent to defendant on a semimonthly basis. This procedure is more consistent with a cost plus contract than a fixed price contract. The amount billed on each invoice bore no relationship to the alleged fixed price of the machines but instead was based upon the computation of time and materials.

Plaintiff argues that a fixed price is manifested by the fact that the contract sets forth the cost of each machine at a specific price. It points out that the only approximate price in the contract concerns the initial engineering charges. Furthermore, when the order for one stainless steel machine and two plastic machines was subsequently modified to two stainless steel machines and one plastic machine, the increased cost of $35,000 reflected the exact difference in cost between the two types of machines as set out in the contract. The additional engineering charges contained in the modifications were also for specific amounts. Thus, plaintiff contends, the contract and its modifications show that a fixed rate contract was intended. We reject this conclusion, however, because the specific costs and increases noted by plaintiff are equally consistent with a cost plus contract with an upset price. The specific increases in price set forth in the modifications would serve to raise the maximum cost allowable to accommodate the increase costs necessitated by the modifications.

We also disagree with plaintiff's argument that the cancellation clause supports its contention that the contract was for a fixed price. At oral argument, plaintiff suggested that the hourly rates and charge for materials were put in the contract so that cancellation charges for items purchased and labor and engineering costs could be ascertained. Plaintiff also argues that the disputed $59,348.06 approximates the cancellation charge of $70,000, thereby showing that plaintiff correctly determined its costs and expenses plus anticipated profit. The hourly rates and material costs, however, were not part of the paragraph concerning cancellation, and they were set forth in an entirely separate provision. Moreover, these figures were used by plaintiff as the basis for its semimonthly invoices, not held in reserve in case of cancellation. As for plaintiff's argument that the disputed amount approximates the cancellation charge, any correlation between these two figures is conjectural.

■■ We conclude that the ambiguity in the contract regarding the cost of the machines must be resolved in favor of defendant. The language and form of the contract, the preliminary negotiations and the agreed method of billing evidence the intent of the parties to create a cost plus contract with an upset price rather than a fixed rate contract. The only indication that plaintiff had intended the contract to be a fixed rate contract did not become evident until plaintiff sent defendant an invoice for the disputed

700

$59,348.06 three months after the contract was completed, and this is insufficient to establish that the parties intended to create a fixed rate contract.

Accordingly, the judgment of the trial court awarding plaintiff $59,348.06 is reversed, and judgment is entered in favor of defendant. In view of our decision, we need not address plaintiff's cross-appeal regarding the denial of interest.

Reversed.

McGILLICUDDY and WHITE, JJ., concur.