ROBERT C. SCHWARZE, Plaintiff-Appellee and Cross-Appellant, *v.* SOLO CUP COMPANY, Defendant-Appellant and Cross-Appellee.

Second District   No. 82—175

Opinion filed February 9, 1983.—Rehearing denied March 10, 1983.

Stewart Dolin, of Fox & Grove, and Paul J. Bargiel, of Doss, Puchalski, Keenan & Bargiel, Ltd., both of Chicago, for appellant.

Ellis E. Fuqua and William P. Anderson, both of Fuqua, Winters, Wy-

socki & Stiles, Ltd., of Waukegan, for appellee.

JUSTICE NASH delivered the opinion of the court:

Plaintiff, Robert C. Schwarze, brought this action in the circuit court seeking damages from defendant, Solo Cup Company (Solo), for the alleged breach of an employment agreement. After a bench trial, the trial court entered judgment in favor of Schwarze for $71,271.23, together with costs of suit. Solo appeals, contending that the trial court erred: (1) in considering parol evidence to find a breach of the employment agreement; and (2) in its calculation of damages. Schwarze cross-appeals, also contending that the court miscalculated the damages due to him.

The parties appear to be in substantial agreement as to the facts underlying this litigation. Prior to November 7, 1978, Schwarze was employed by Libby, McNeil & Libby as corporate vice-president in charge of sales management. During 1978 Schwarze was approached by Robert Wolfe, a corporate placement executive, who had been retained by Solo to recruit employees for executive sales and marketing positions. Schwarze expressed an interest in those positions and over the next several months met with Wolfe and officers of Solo to discuss employment. During some of these meetings Schwarze mentioned that he owned a house in Lake Bluff and that his children were currently enrolled in a local high school. Because of this, Schwarze said he would not consider a position which would require his relocation outside of the Chicago area until after his children had graduated from high school.

On November 7, 1978, after much negotiation, Schwarze and Solo entered into a written letter of agreement (Agreement) delineating the terms of his employment with Solo which was prepared on Solo's corporate sales office letterhead in Highland Park, Illinois. As pertinent, it provided that Schwarze would be employed as "Vice-President, Sales and Marketing, Institutional and Consumer Products Divisions" for a period of four years commencing November 7, 1978. Schwarze would receive as compensation a salary of $85,000 per year plus the following benefits: annual membership at a Lake Forest tennis club, use and expenses of a company car, health insurance, life insurance, vacation and reimbursement for all properly incurred business expenses. Either party could terminate the Agreement, with or without cause, by giving the other one month's prior written notice. If Schwarze terminated the Agreement, he would receive only salary and benefits which had accrued to the date of termination; if Solo terminated the Agreement, it would continue to pay to Schwarze "salary

and benefits" from the date of termination until the expiration of the term of the contract. However, in that event, the "salary" payments would be reduced by the amount of salary received by Schwarze from other employment and would terminate altogether upon Schwarze being offered substantially equivalent employment. "Substantially Equivalent Employment" was defined in the Agreement as any employment providing total compensation of at least $85,000 a year. In addition, Solo had the right to assign the contract to any business or company which was wholly owned by it. There was no express provision in the contract which specified either Schwarze's place of employment or Solo's right to transfer him out of the Chicago area.

Schwarze began employment and five months later, in April of 1979, Leo Hulseman, an officer of Solo, informed Schwarze that he was to begin working full-time for Premore, Inc. (Premore), as corporate vice-president in charge of sales and marketing. Schwarze assumed his new duties and continued to receive his salary from Solo together with the other benefits provided for in the Agreement; he continued to work out of the Highland Park office.

Subsequently, on December 14, 1979, Schwarze received a telephone call from Leo Hulseman directing Schwarze to move out of the Premore office and "spend 100% of his time looking for another job." Although not in writing, both parties treated this conversation as a termination of the Agreement. Schwarze ceased fulfilling his duties for Premore and Solo continued to pay his salary and benefits as provided for in the event of Solo's termination of the Agreement. The parties did not then, nor do they now, contest the validity of the termination because it was not in writing as specified in the Agreement.

Schwarze sought other employment and on February 13, 1980, he received another call from Leo Hulseman inquiring as to his progress. After Schwarze explained his actions, Hulseman replied "we can't wait forever" and accused Schwarze of being "on the gravy train too long." Hulseman also recommended that Schwarze take a job for less money. On that same date, Hulseman sent a letter to Schwarze informing him that he was being assigned "to a sales capacity for Solo Cup Company in the New York City territory." The letter stated that Schwarze should assume his duties within seven days and that a permanent relocation to the New York area was expected. It also stated that if Schwarze accepted his new assignment, Solo would continue to honor the Agreement. Hulseman subsequently advised Schwarze that Solo would not reimburse him for the costs and expenses of relocation.

Schwarze refused the assignment and Solo terminated its pay-

ments under the Agreement on February 20, 1980. Subsequently, in April 1980, Schwarze was again employed at Libby, McNeil & Libby with an annual salary of $62,000, and on May 27, 1980, this litigation was commenced.

During trial, the court found that the Agreement was ambiguous as to whether Schwarze was to be employed solely in the Chicago area. Although the Agreement is silent as to this issue, the trial court relied upon the facts that the Agreement was printed on the corporate sales office letterhead in Highland Park, Illinois, and that Schwarze's benefits included membership at a Lake Forest tennis club. Over Solo's objection, the court admitted parol evidence, including precontract negotiations, and found that the Agreement contemplated employment only in the Chicago area. The court concluded that Solo's attempt to transfer Schwarze to New York was a breach of the Agreement by it.

In determining damages, the court calculated the difference in salary received at Schwarze's current position and that which he would have received under the terms of the Agreement in the sum of $71,271.23. However, the court refused to increment the damages by the monetary value of the benefits which Schwarze would have received under the Agreement. That sum was stipulated by the parties to be $19,346 (auto expense $9,600; medical expense $2,814; dental expense $1,307; life insurance $600; tennis club $5,025). The court also declined to offset against damages $1,293 in unemployment compensation received by Schwarze during his unemployment and a $5,000 bonus awarded Schwarze by Libby, McNeil & Libby which was deferred by Schwarze until his retirement. Accordingly, judgment was entered against Solo in the amount of $71,271.23.

On appeal, Solo contends that the circuit court erred in considering parol evidence to impose a geographical employment restriction on the Agreement. It asserts that no such express provision is found in the Agreement and therefore the transfer of Schwarze's employment to New York was proper and his failure to accept the assignment was a termination of the Agreement by him. Solo further argues that any damages awarded should have been reduced by the amount of bonus and unemployment compensation Schwarze received. On cross-appeal, Schwarze contends that his damages should have been increased by the monetary value of the benefits he would have received from Solo under the Agreement.

■ Initially, it should be noted that in the absence of any material questions of fact the construction of a contract and its legal effect present questions of law which may be independently determined by

the reviewing court unrestrained by the trial court's judgment. (*Mazanek v. Rockford Drop Forge Co.* (1981), 98 Ill. App. 3d 956, 959, 424 N.E.2d 1271, 1276, *appeal denied* (1981), 85 Ill. 2d 578; *Ancraft Products Co. v. Universal Oil Products Co.* (1981), 100 Ill. App. 3d 694, 697-98, 427 N.E.2d 585, 587, *appeal denied* (1982), 88 Ill. 2d 549.) Thus, the reasons given for a judgment by the trial court are not material if the judgment is correct, and the reviewing court will affirm the judgment upon any legal grounds which have support in the record. *Keck v. Keck* (1974), 56 Ill. 2d 508, 514, 309 N.E.2d 217, 220; *Ogden Group, Inc. v. Spivak* (1981), 92 Ill. App. 3d 932, 934, 416 N.E.2d 393, 394; *Lasswell v. Ehrlich* (1981), 92 Ill. App. 3d 935, 936, 416 N.E.2d 423, 424.

In making this determination, the courts must give meaning to the plain language of the written contract. *Mazanek v. Rockford Drop Forge Co.* (1981), 98 Ill. App. 3d 956, 959, 424 N.E.2d 1271, 1276, *appeal denied* (1981), 85 Ill. 2d 578; *Ahlvers v. Terminal R.R. Association* (1975), 31 Ill. App. 3d 166, 171-72, 334 N.E.2d 329, 333-34.

We consider that the December 14 telephone call from Hulseman to Schwarze was a termination of the Agreement by Solo. The parties thereafter treated it as such as Solo continued to pay salary and benefits to Schwarze after he had moved out of the corporate offices, ceased performing his duties and began looking for other employment on a full time basis. This conclusion is supported by the testimony of the witnesses at trial and by certain exhibits consisting of correspondence between the parties, through their attorneys, in which the December telephone call is characterized and treated as a termination of the Agreement by Solo. Thus, the issue before this court is not whether the February 13 letter was a transfer to New York in violation of an implied geographical restriction in the Agreement as determined by the trial court. Rather, the issue is whether the February 13 letter was an offer of reemployment which Schwarze had to accept in order to mitigate his damages as required by paragraph 10 of the Agreement.

Paragraph 10 of the Agreement provides in pertinent part:

"Should the Employer desire to terminate the employment with or without cause, Employer agrees to give Employee one (1) month's prior notice in writing and in such event Employee shall continue to be paid full *salary and benefits* from the date of termination for the period of time remaining under this contract. *Salary* shall be reduced by the amount of any *salary* from any source paid Employee after termination or shall be discontinued upon Employee being offered substantially equiva-

lent employment. 'Substantially equivalent employment,' as the term is used herein, shall be defined to mean employment of any nature providing total compensation of at least Eighty-five Thousand Dollars ($85,000.00) per year." (Emphasis added.) This provision is essentially an express incorporation of the common law rule that a wrongfully discharged employee must act to mitigate his damages by seeking similar employment, and that his damages will be reduced by those sums which he earns or could have earned through the exercise of reasonable diligence in seeking employment. *People ex rel. Bourne v. Johnson* (1965), 32 Ill. 2d 324, 326-27, 205 N.E.2d 470, 473; *Grauer v. Valve & Primer Corp.* (1977), 47 Ill. App. 3d 152, 157, 361 N.E.2d 863, 867; *Foster v. Springfield Clinic* (1980), 88 Ill. App. 3d 459, 465, 410 N.E.2d 604, 609.

However, when the alternate employment is, in fact, an offer of reemployment by the original employer, exceptions arise to the general rule of mitigation. Depending upon the substance of the offer and the circumstances under which it is made, the employee need not always accept such an offer or be precluded from seeking damages. It has long been recognized that a discharged employee need not accept an offer of reemployment where to do so would constitute a disadvantagous renegotiation of his original contract or an abandonment of his rights and remedies thereunder. (*Trawick v. Peoria & Fort Clark Street Ry. Co.* (1896), 68 Ill. App. 156, 159; *Claeson v. Hennessey* (1959), 20 Ill. App 2d 437, 443, 156 N.E.2d 234, 238.) In *Trawick* the court held that an employee had no duty to continue employment at a reduced wage since to do so would have operated as an abandonment of his rights under his original contract. Similarly in *Claeson,* the employer's offer to reemploy two weeks after his breach of the employment contract was held not to be a valid defense to the action.

Other jurisdictions have recognized similar exceptions to the mitigation rule where an offer to reemploy constitutes a renegotiation or abandonment of the original contract. *Williams v. Albemarle City Board of Education* (4th Cir. 1974), 508 F.2d 1242, 1243-44 (need not accept demotion at same salary); *Parker v. Twentieth Century-Fox Film Corp.* (1970), 3 Cal. 3d 176, 474 P.2d 689, 89 Cal. Rptr. 737 (offer of inferior employment); *Rotter v. Stationers Corp.* (1960), 186 Cal. App. 2d 170, 8 Cal. Rptr. 690 (general exception to rule); *Billetter v. Posell* (1949), 94 Cal. App. 2d 858, 211 P.2d 621 (offer for less wage); *Smith v. Beloit Corp.* (1968), 40 Wis. 2d 550, 162 N.W.2d 585 (offer for less wage); *Larson v. Fisher* (1951), 259 Wis. 355, 48 N.W.2d 502 (offer must not require loss of rights under original contract); *Redman v. Department of Education* (Alaska 1974), 519 P.2d

760 (offer prejudices prior contract rights); *University of Alaska v. Chauvin* (Alaska 1974), 521 P.2d 1234 (tenured employee need not accept nontenured position); *Steranko v. Inforex, Inc.* (1977), 5 Mass. App. 253, 362 N.E.2d 222 (offer for lesser capacity in humiliating circumstances).

In light of the foregoing authority we conclude that Schwarze was not required to accept the February 13 offer of employment by Solo in New York in order to mitigate his damages. He had been originally employed as "Vice-President, Sales and Marketing, Institutional and Consumer Products Division," and his remuneration included reimbursement for properly incurred business expenses. However, the February 13 offer was for a lesser sales position which would require Schwarze to pay his own relocation expenses. Additionally, considering the circumstances of the offer, his future position at Solo could, at best, be described as compromised.

■ It has been recognized that if an employee is hired for a specific position, a subsequent demotion or diminution of duties may be a breach of the employment contract. (*Angle v. Hanna* (1859), 22 Ill. 429, 432; *Seymore v. Reader's Digest Association, Inc.* (S.D.N.Y. 1980), 493 F. Supp. 257; *Rudman v. Cowles Communications, Inc.* (1972), 30 N.Y.2d 1, 330 N.Y.S.2d 33, 280 N.E.2d 867; *Miller v. Winshall* (1980), 9 Mass. App. 312, 400 N.E.2d 1306; *Hayes v. Resource Control, Inc.* (1976), 170 Conn. 102, 365 A.2d 399.) We see no reason why Schwarze should be required to mitigate his damages by accepting an offer from Solo which, in itself, would have breached the original Agreement had it still been in force. The fact that the salary was the same does not erase the stigma attached to the demotion and change of duties. (See *Williams v. Albemarle City Board of Education* (4th Cir. 1974), 508 F.2d 1242, 1243.) Any other result would clearly be inequitable in that it would allow Solo to breach the Agreement and then cut off its own liability by offering employment not contemplated by the agreement, thus forcing Schwarze to renegotiate the Agreement to his own disadvantage or be precluded from seeking damages. Such a manipulative interpretation of the Agreement, if allowed, would make the employment contract wholly illusory. Accordingly, we hold that Schwarze was not required to mitigate his damages by accepting the offer of reemployment from Solo which would result in a forced renegotiation of his Agreement and an abandonment of his rights thereunder. The judgment of the trial court as to Solo's liability under the Agreement is therefore affirmed on this basis.

With respect to damages, the parties agree that the difference in

salary received by Schwarze pursuant to his current employment vis-a-vis the Agreement is $71,271.23. However, Solo contends that this sum should be reduced by the amounts of the bonus and unemployment compensation he received. Paragraph 10 of the Agreement states that "salary" payments to Schwarze shall be reduced by "any salary" paid to Schwarze. Thus, the issue is whether a "bonus" is "salary."

■ Black's Law Dictionary defines "salary" as a "reward or recompense for services performed." (Black's Law Dictionary 1200 (5th Ed. 1979).) "Bonus" is defined as "[a] consideration or premium paid in addition to what is strictly due. A gratuity to which the recipient has no right to make a demand." (Black's Law Dictionary 165 (5th Ed. 1979).) Moreover, Webster states that "bonus refers to anything given over and above the regular wages, *salary*, remuneration, etc. ***." (Emphasis added.) (Webster's New World Dictionary (1966).) From these definitions it can be seen that a "bonus" is not "salary" since the former is an unenforceable gratuity while the latter is payment for services. The case law has upheld such distinctions in similar situations. (*Pleasants v. Pleasants* (1971), 27 Ohio App. 2d 191, 273 N.E.2d 339 (salary is fixed payment for services); *Management Search, Inc. v. Morgan* (1975), 136 Ga. App. 651, 222 S.E.2d 154 (bonus is paid in addition to normal consideration); *Boyett v. Landon* (1977), 238 Ga. 175, 231 S.E.2d 765 (the term "salary" in divorce decree includes only fixed compensation and not bonuses); *In re Estate of Gregoriou* (1976), 142 N.J. Super. 465, 361 A.2d 636 (bonus is paid in excess of payment for services).) Thus we find that the bonus Schwarze received was not salary and therefore will not be offset against his damages under the Agreement.

■ The unemployment payments received by Schwarze after Solo ceased salary payments under the agreement and before he secured another position cannot, in our view, be considered as salary within the terms of paragraph 10 of the Agreement. These are benefits payable because of unemployment intended to relieve financial distress (Ill. Rev. Stat. 1979, ch. 48, par. 300 *et seq.*) and may not be considered as salary. (See *Monroe v. Oakland Unified School District* (1981), 114 Cal. App. 3d 804, 810, 170 Cal. Rptr. 867, 870; *Century Papers, Inc. v. Perrino* (Tex. Civ. App. 1977), 551 S.W.2d 507, 510-11; *Billetter v. Posell* (1949), 94 Cal. App. 2d 858, 860, 211 P.2d 621, 623.) We find the trial court was correct in refusing to offset unemployment benefits against damages and, accordingly, that portion of the judgment is affirmed.

■ Finally, Schwarze argues that his damages should also include

the monetary value of the benefits to which he was entitled under the Agreement. We agree. Paragraph 10 states that Solo will continue to pay Schwarze "salary and benefits" in the event of Solo's termination of the Agreement. Contracts are to be enforced according to the plain meaning of the language used (*Mazanek v. Rockford Drop Forge Co.* (1981), 98 Ill. App. 3d 956, 959, 424 N.E.2d 1271, 1276, *appeal denied* (1981), 85 Ill. 2d 578; *Ancraft Products Co. v. Universal Oil Products Co.* (1981), 100 Ill. App. 3d 694, 697-98, 427 N.E.2d 585, 587, *appeal denied* (1982), 88 Ill. 2d 549), and the trial court should have included the benefits as part of the damages awarded to Schwarze in addition to his salary. Moreover, as there is no corresponding provision in paragraph 10 which would allow Solo to offset current benefits received by Schwarze against the benefits provided for in the Agreement, Schwarze is entitled to retain any benefits received by virtue of his new employment.

Since the value of the benefits has been stipulated by the parties to be $19,346, the case will be remanded to the trial court with directions it enter judgment in favor of Schwarze and against Solo for salary ($71,231.23) and benefits ($19,346) in the total sum of $90,577.23 and costs.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed in part, reversed in part and remanded with directions.

Affirmed in part, reversed in part and remanded with directions.

HOPF and VAN DEUSEN, JJ., concur.