(No. 81-CC-174)

DAVID UMBAUGH, Claimant, *v*. BOARD OF TRUSTEES OF
SOUTHERN ILLINOIS UNIVERSITY, Respondent.

*Opinion filed September 7, 1984.*

*Order filed March 11, 1985.*

THOMAS GUMBEL and BARBARA C. GUMBEL, for
Claimant.

NEIL F. HARTIGAN, Attorney General (RONALD D.
LOWERY, of Reed, Armstrong, Gorman & Coffey, and
SHARI RHODE, of Southern Illinois University, of
counsel), for Respondent.

ROE, C.J.

This case arises out of a breach of contract action filed by the Claimant, David Umbaugh, against the Board of Trustees of Southern Illinois University, alleging that the University did not give Claimant proper notice prior to termination as required by his employment contract.

The Respondent, Southern Illinois University, argues that, while it did not give the Claimant six months' written notice as required by his employment contract, it did give him six months' "constructive" notice or, in the alternative, that the Claimant failed to mitigate his damages.

Claimant was employed as a visiting lecturer at Southern Illinois University at Edwardsville from September 1, 1977, through June 30, 1978, and again from July 1, 1978, through May 31, 1979. The Claimant was also given a contract for employment for the summer of 1979. It is upon this latter contract that Respondent bases its argument concerning constructive notice. According to the terms of all Claimant's contracts, Claimant was hired to teach and serve as tutor to students in biology and chemistry. The contracts stated in part:

"A lecturer is a faculty member in a temporary or non-regular rank and shall normally be appointed for no longer than one academic year. The appointment may be renewed annually but if there is uncertainty about reappointment following his second or subsequent year of employment, he shall be given written notice no less than six months preceding the termination of his appointment."

Respondent does not dispute that this section is applicable to the Claimant nor does Respondent dispute the fact that the Plaintiff was not given six months' written notice.

Respondent argues that, although Claimant was never notified in writing that his position was being terminated, the Claimant by his own admission knew that his position "might be terminated" as early as April or May of 1979. Respondent also points out that during discussions with university officials Dr. Jason and Dr. Morgan in April and May of 1979, Claimant had argued that it was not fair to leave him uncertain about his summer employment, especially if funding for the university did not allow Respondent to rehire Claimant in the fall. Since Claimant was as a result given a two-month summer contract, Respondent argues that it is reasonable that Claimant knew that, when he accepted the two-month summer contract, he would not be reappointed in the fall of 1979 and that the two-month contract was either in settlement of his six-months' notice requirement or the beginning of the six-months' notice period.

Testimony by the Claimant strongly indicates that he never made any settlement agreement with university officials concerning the two-month summer appointment and that he only believed he "might" be terminated. There has been no contradictory testimony indicating that the Claimant was ever directly told he would be terminated or that the two-month appointment was in return for waiving the six months' notice requirement. While Dr. Jason testified such was his understanding, neither he nor any other university official admitted to specifically informing Claimant that he was being terminated or that the two-month

appointment was in settlement of the six-months' notice requirement. Furthermore, the record indicates that on July 7, 1979, Claimant was sent a letter by Dr. Jason stating that Dr. Jason was recommending Claimant for a $100.00 per month raise for fiscal year 1979. This letter is clearly inconsistent with Respondent's argument that Claimant should have known he was being terminated.

Given these facts, it is apparent to the Court that Respondent has created a situation which is clearly inconsistent with both the specific language and the intent of the contract. Respondent has admitted it wrote the contract. Included is a clause which states unambiguously that the Claimant is entitled to six-months' written notice. The clear intent of this clause is to provide protection for Claimant so that he would know definitely whether he was to be included in the future employment plans of the university. Respondent's failure to strictly adhere to the terms of the contract created a situation which the contract was designed to prevent. The Court therefore finds that Respondent has breached the contract.

A wrongfully discharged employee must act to mitigate his damages by seeking similar employment, and his damages will be reduced by those sums which he earns or could have earned through the exercise of reasonable diligence in seeking employment. (*Schwarze v. Solo Cup Co.* (1983), 112 Ill. App. 3d 632, 445 N.E.2d 872.) Furthermore,where a contract for employment contains provisions for termination upon a certain period of notice, damages for wrongful termination of employment are limited to the nearest date at which the employer could rightfully exercise this privilege. *United Protection Workers of America Local No. 2 v. Ford Motor Co.* (7th Cir. 1955), 223 F.2d 49.

Given the terms of the contract, Respondent could have rightfully discharged the Claimant six months after he was given written notice. Since all of the testimony indicates that the Claimant was never given any written notice, Claimant was denied the six-month period of employment during which he could search for another job. Claimant, however, is limited to damages incurred during that six-month period from the date of termination. According to all testimony, this period would include the six months from August of 1979 to January of 1980.

It is uncontested that Claimant was unemployed during this entire period. The question, therefore, is whether Claimant used reasonable diligence in mitigating his damages. Claimant has introduced an exhaustive list of places to which he applied for jobs during this period without success. Respondent does not directly attack the authenticity of the Claimant's application but rather argues that it offered Claimant a contract for employment at the university for four months beginning in January of 1980. Respondent argues that this contract should be applied as against four months' damages. The Court disagrees.

Claimant was unemployed for the months of August 1979 through December 1979 before the Respondent offered him a job. Claimant could not recover the lost wages for these five months without forfeiting his right to work elsewhere from January of 1980 to March 1980. Those five months of earnings were, therefore, lost to him forever. The month of January, however, must be considered separately from the first five months.

Respondent offered Claimant a four-month contract for January of 1980 through March of 1980.

Respondent is therefore correct in alleging that Claimant did not mitigate his damages for the month of January. However, Illinois courts have held that a reemployment situation is an exception to the general rule of mitigation of damages, and depending upon the substance of the offer and circumstances under which the offer is made, wrongfully discharged employees need not always accept the offer or be precluded from seeking damages. (*Schwarze v. Solo Cup Co.* (1983), 112 Ill. App. 3d 632, 445 N.E.2d 872.) Dr. Emil Jason testified that the salary for the four-month contract was the same as the Claimant's previous contract. Claimant testified, however, that salary was never discussed, that he was given one day to accept the position, that there was no course curriculum, that there was no student list, that there were no textbooks, that there were no lab instruments, that he had never taught a laboratory course, and that in general the duties were unlike those which he had previously performed. Respondent did not dispute any fact except the salary.

Illinois courts have recognized that equal salary alone is not enough to force an employee to accept an offer of reemployment if the new contract constitutes a disadvantageous renegotiation of the original contract. (*Schwarze v. Solo Cup, id,* at 876.) It is the opinion of the Court that the dramatic change in duties of the proffered contract substantially changed the terms of the original contract. Had Claimant accepted the contract at such a late date with so little organization, Claimant likely would have been forced to expend a great deal more effort to teach a substandard course, thereby damaging his reputation. The Court therefore finds that Claimant was not obligated to accept the contract.

It is agreed that Claimant was earning $1400.00 per

month. He is entitled to damages in the amount of six months' salary. It is also agreed that the Claimant is entitled to 16 11/12 vacation days. The Court computed this figure to equal $1076.73 in wages. For the reasons stated herein, the Claimant is hereby awarded the sum of $9,476.73.

## ORDER

Roe, C.J.

This matter is before the Court on the Court's own motion and the Court being fully advised;

This is a claim for breach of an employment contract against the Respondent's Board of Trustees of Southern Illinois University (Edwardsville). On September 7, 1984, the Court rendered an opinion in favor of the Claimant awarding him $9,476.73.

Section 24 of the Court of Claims Act (Ill. Rev. Stat. 1983, ch. 37, par. 439.24) provides the authorization for the Court to direct immediate payment of certain claims. With respect to breach of contract claims, the Court is only authorized to direct immediate payment where the award made is less than $2,500.00. If an award in such a case exceeds that amount it is customary for the Court to advise the legislature of the claim and seek an appropriation to fund the award. In appropriating funds for awards, it is the intention to make the money payable out of the fund from which the debt would have been paid had it not come to the Court of Claims.

In the case at bar the Claimant would have been paid entirely with Federal funds. These funds expired or otherwise became unavailable on June 30, 1980. Nothing in the record indicates that the Respondent made any provision to retain or reserve any of these funds for the

contingency of this claim. Therefore it will not be possible for an appropriation to be made for the award out of the funds from which the Claimant would have been paid but for the breach of the contract.

The award in this case is in excess of $2,500.00. It will have to be presented to the legislature for payment. It is our recommendation, in cases such as this, where a breach of employment contract is involved, that the claim be paid out of the Respondent's general revenue fund.

We further note that the Claimant testified to having received unemployment compensation from September 1979 to February 1980. The award for back wages was made for the six-month period of time from August of 1979 to January 1980. Pursuant to section 900D of the Unemployment Insurance Act (Ill. Rev. Stat., ch. 48, par. 490D) any award herein should be made payable to the Claimant and to the Director of the Department of Employment Security.