340 S.E.2d 797 (1986)
Alva S. BRADY, R.N.
v.
HUMAN RESOURCE INSTITUTE OF NORFOLK, INC.
Record No. 821220.
Supreme Court of Virginia.
March 7, 1986.
Stanley G. Bryan, Robert E. Gibson (John E. Zydron, Bryan & Zydron, Chesapeake, on briefs), for appellant.
E. Leslie Cox (Breeden, MacMillan & Green, Norfolk, on brief), for appellee.
Present: All the Justices.
COCHRAN, Justice.
Alva S. Brady, a registered nurse, applied for unemployment compensation benefits after she was discharged by her employer, Human Resource Institute of Norfolk, Inc. (HRI). A deputy of the Virginia Employment Commission (the Commission) determined that she was entitled to benefits because HRI had failed to prove that Brady was discharged for work-related misconduct. This decision was affirmed by an appeals examiner and, upon review, by the Commission. Upon employer's petition for judicial review under Code § 60.1-67.1, however, the trial court by final order entered April 21, 1982, ruled that Brady was disqualified from receiving unemployment benefits because the Commission's findings of fact were unsupported by the evidence and its decision on matters of law was "untenable."
Under Code § 60.1-58(b) an applicant is disqualified for unemployment benefits if the Commission finds that the employee was discharged "for misconduct connected with his work." Code § 60.1-67.1 provides that in any judicial proceedings under the chapter, "the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of such court *798 shall be confined to questions of law." There is no allegation or suggestion of fraud. On appeal, therefore, the dispositive question is whether the Commission's findings of fact were supported by evidence. After a careful review of the record, we answer that question in the affirmative and hold that the trial court erred in ruling to the contrary.
The appeals examiner in his decision dated April 10, 1981, set forth findings of fact based upon the evidence introduced at the hearing conducted by him. The Commission, after hearing arguments of counsel, based its decision dated December 2, 1981, upon the same evidence taken before the appeals examiner. For the most part, the findings of fact are not challenged by HRI.
Brady was employed by HRI as a staff nurse from January 1975 until her discharge on September 18, 1980. She also worked part-time on occasions for Dr. W.S. Jennings. On September 18, 1980, Brady ran into difficulty when she attempted to have a prescription for a thyroid drug refilled. She attempted to telephone the HRI pharmacy but the line was busy. Brady had to leave the building to take some patients on an outing. Before leaving, she asked another employee to call the pharmacy for her, using the bottle on which the prescription was written to order the refill. The employee made the call, representing that she was calling from Dr. Jenning's office, but the pharmacist became suspicious. He telephoned the doctor's office and was told by the person answering the telephone that she had no information about a prescription for Brady. When Brady came to the pharmacy to pick up her prescription, the pharmacist, as directed by the administrator to whom he had reported his concern, sent her to her supervisor, who informed her she was "terminated" for calling in the prescription. Brady's request for an immediate conference with the administrator was granted. In a meeting attended by the administrator, the supervisor, the pharmacist, and Brady, Brady's discharge was confirmed without further hearing.
HRI takes issue with this finding of fact made by the appeals examiner:
As a registered nurse the claimant has had the authority to request by telephone pharmacies to fill continuing prescriptions both for herself and other patients. The claimant had been under the care of this doctor for thyroid problems since about 1964, and has been on medication prescribed by this doctor since about that time. This medication she was on with the doctor was called a continuing prescription, and as such the claimant merely had to call her pharmacy when she needed more of the drug. The doctor did not have to write out a new prescription each time the claimant needed more of the thyroid drug.
HRI contends that there is no evidence that Brady had authority from HRI or her physician to prescribe drugs for herself and others and to order the HRI pharmacy to fill such prescriptions. It is true, as HRI states, that Brady had no prescription for thyroid tablets on file at the HRI pharmacy, had never had such a prescription filled at that pharmacy, and had no authority from HRI to order thyroid tablets for herself. But the uncontradicted testimony of Dr. Jennings and Brady was that Brady had been under Jennings's care for thyroid problems since 1964, that Jennings gave Brady what he termed a "continuing prescription" for thyroid drugs, and that he did not have to write out a new prescription each time Brady needed an additional supply. Dr. Jennings testified that Brady, as his nurse, had authority to telephone a pharmacy to request a refill of a prescription for herself or another patient. She was available for part-time duty in Dr. Jennings's office when needed; therefore, she had his authorization to call in prescriptions, using his name.
Brady testified that she had Dr. Jennings's prescription in her hand when she met with the HRI administrator but he was not interested in seeing it. The pharmacist conceded that he had telephoned one of Dr. Jennings's offices to inquire whether Brady was taking thyroid medication and was *799 told that Brady did take such medicine and had called earlier that day to get a renewal of her prescription but Dr. Jennings was not in the office. The evidence showed that Brady's prescriptions for thyroid tablets previously had been filled at another pharmacy.
Brady said that she had called Dr. Jennings's office on September 18, not for the purpose of having him renew her prescription, for that was unnecessary, but to get him to transfer the prescription to the HRI pharmacy. Dr. Jennings, however, was out of his office. She declined to identify the HRI employee who complied with her request to call the HRI pharmacy to order the refill of her prescription because she was informed that the employee, if identified, would be discharged.
HRI argues that Brady violated professional ethics in ordering the HRI pharmacy to dispense thyroid tablets, a controlled drug, for her personal use when the pharmacy had no prescription for the tablets, that Brady's violation of ethical standards also constituted a knowing violation of HRI's personnel policy, and that she was discharged for unethical conduct. As the Commission recognized, however, the burden was on HRI to establish that Brady was discharged for misconduct within the meaning of the following definition:
In our view, an employee is guilty of "misconduct connected with his work" when he deliberately violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a willful disregard of those interests and the duties and obligations he owes his employer.
Branch v. Employment Comm., 219 Va. 609, 611, 249 S.E.2d 180, 182 (1978) (emphasis in original).
The appeals examiner, who made the findings of fact, was of opinion that Brady's actions "were in keeping with her duties as a nurse and were clearly acceptable" to Dr. Jennings. The examiner concluded that the evidence, while revealing the exercise of "extremely poor judgment" by Brady, did not show that she deliberately violated a work rule or willfully disregarded her employer's interests or her duties to the employer. We hold that this conclusion was supported by the evidence.
Code § 54-524.68(c), prior to amendment, provided that a prescription for a Schedule VI drug "may not be refilled, unless authorized by the practitioner either on the face of the original prescription or orally by the practitioner." HRI contended in oral argument that Brady had neither written nor oral permission from Dr. Jennings to refill the prescription. Taking the doctor's testimony in the light most favorable to Brady, however, it established oral authority for Brady to order, in Jennings's name, a refill of her continuing prescription.
While the appeal of this decision to the full Commission was pending, HRI represented to the Commission that the State Board of Nursing had issued a letter to Brady dated September 29, 1981, reprimanding her for attempting to obtain a Schedule VI controlled substance, thyroid tablets, from HRI pharmacy without a proper prescription. HRI sought to introduce the letter into evidence before the Commission. The special examiner, conducting the hearing on the appeal to the Commission, refused to permit the letter to be introduced, holding that the decision on appeal must be based on the record before him. This ruling was correct. At the outset of the hearing, the special examiner informed opposing counsel that the purpose of the hearing was to hear oral argument. The record had been completed in April 1981 when the evidence was taken before the appeals examiner. On appeal, the Commission's duty was to review the record made before the appeals examiner and the arguments of counsel made before the special examiner.
Holding as we do that the findings of fact approved by the Commission were supported by evidence, it follows that the Commission correctly ruled that HRI had failed to prove Brady was discharged for misconduct connected with her work as we have *800 defined such misconduct. Accordingly, we will reverse the judgment appealed from, reinstate the decision of the Commission dated December 2, 1981, and remand the case to the trial court with directions to remand to the Commission for further proceedings consistent with this opinion.
Reversed and remanded.