**Richmond**

DONNIE W. WELLS

v.

COMMONWEALTH OF VIRGINIA,

DEPARTMENT OF TRANSPORTATION

No. 0315-92-2

Decided January 5, 1993

562

COUNSEL

Gary Kendall (Michie, Hamlett, Lowry, Rasmussen & Tweel, P.C., on brief), for appellant.

James W. Shortt, Assistant Attorney General (William H. Hauser, Senior Assistant Attorney General; Gail Starling Marshall, Deputy Attorney General; Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

WILLIS, J.—On appeal from the order of the Workers' Compensation Commission denying him compensation, Donnie W. Wells contends that the commission erred (1) in holding that he suffered from an ordinary disease of life rather than from an occupational disease, (2) in failing to give proper weight to the opinion of his treating physician, and (3) in holding that he was required to prove his entitlement to compensation by clear and convincing evidence. We hold that the record establishes that Wells suffered an occupational disease and that the opinion of his treating physician sufficiently established this. On that basis, we reverse. It is not necessary that we address the third assignment of error.

While employed by the Virginia Department of Transportation (VDOT), Wells, a waste water treatment plant operator, contracted chronic gastritis and inflammation of the stomach caused by *helicobacter pylori* bacteria. Wells's job required him to clean sewage filters at two rest area sewage treatment plants. Because the filters did not have handles, Wells could not use gloves to remove them. This required him to place his bare hands in raw sewage approximately twenty to twenty-five hours per week. It also required him to stand without protective clothing in raw sewage four to five times a month for three to four hours at a time. VDOT provided no shower.

Well water from the Wells's residence tested free of the bacterium. Neither Wells's wife nor any other member of his family suffers from the infection.

The record contains two letters written by Dr. Marshall, Wells's treating physician. On June 4, 1990, Dr. Marshall wrote, in part:

[T]his germ is only newly discovered and is believed to be the cause of both gastritis and ulcer disease of the stomach . . . It is possible that [Wells] acquired this infection during work in the sewage treatment plant.

On September 13, 1990, Dr. Marshall wrote:

Unlike most patients with *Helicobacter Pylori* infection, [Wells] has no family members who suffer from ulcer disease or gastritis, neither does his wife. The background prevalence of this infection in 41 year-old men is about 15%, again mostly in people with a family history of gastric disorder.

The spread of the organism is probably by the fecal-oral route . . . . It is relevant therefore that [Wells] worked at a sewage treatment plant and would be intimately exposed to fecal organisms and water-borne infections in his daily work.

Mr. Wells' symptoms started after he commenced work in his present employment. For this and the above reasons, I think the odds are that Mr. Wells acquired this infection in his work place. Presently, Mr. Wells is free from the infection and our experience is that reinfections are uncommon.

■ Wells first contends that the commission erred in finding that he suffered from an ordinary disease of life, rather than from an occupational disease as defined by Code § 65.2-400. When a factual finding of the commission is based upon credible evidence, that finding will not be disturbed on appeal. *See Westmoreland Coal Co. v. Campbell*, 7 Va. App. 217, 317 S.E.2d 411 (1988). However, when the facts are undisputed, their interpretation becomes a matter of law. Such is the case here.

Code § 65.2-400, which defines the term "occupational disease," provides in pertinent part:

A. As used in this title, unless the context clearly indicates otherwise, the term "occupational disease" means a disease arising out of and in the course of employment, but not an ordinary disease of life to which the general public is exposed outside of the employment.

B. A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind, upon consideration of all the circumstances:

(1) A direct causal connection between the conditions under which work is performed and the occupational disease;

(2) It can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment;

(3) It can be fairly traced to the employment as the proximate cause;

(4) It is neither a disease to which an employee may have had substantial exposure outside of the employment, nor any condition of the neck, back or spinal column;

(5) It is incidental to the character of the business and not independent of the relation of employer and employee; and

(6) It had its origin in a risk connected with the employment and flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.

We consider first the six criteria for determining whether the disease arose out of the employment. Criteria (1), (2), and (3) address the same question, the causal relationship between the conditions of employment and the disease. The uncontradicted evidence that *helicobacter pylori* is a water-borne bacterium of fecal origin, that its usual intrusion into the body is by the fecal-oral route, that Wells was daily immersed in an ever-changing and ever-replenished pool of raw fecal matter, that his well water was uncontaminated, that no other member of his family suffers from the infection, and that no other possible source of infection could be disclosed, compels the conclusion that the infection was directly caused by the conditions of Wells's work, followed as a natural incident of the work, and is fairly traceable to the employment.

The evidence suggests no exposure by Wells to the disease outside of his employment. Criterion (4) is satisfied.

Wells's daily contact with raw sewage was incidental to the character of his work and was required by his duty to his employer. Its risk

originated and flowed as a natural consequence from the duties of his employment. Criteria (5) and (6) are satisfied.

We next consider whether the infection is an ordinary disease of life to which the general public is exposed outside of Wells's employment. Holding that such was the case, the commission relied upon Dr. Marshall's statement that the prevalence of *helicobacter pylori* infection in forty-one year old men in Charlottesville is about fifteen percent. However, Dr. Marshall went on to note that this incidence was "mostly in people with a family history of gastric disorder." Wells's family has no such history. His home water source was found to be uncontaminated. The evidence suggested no source of infection other than the vastly rich infectious pool of raw fecal matter with which Wells had intimate and prolonged daily contact through his employment.

> [I]f a claimant's occupational disease may have resulted from substantial exposure outside of the employment, that claimant must meet the more rigorous standard of proof set out in [Code § 65.2-401]. However, where, as here, there is no suggestion that claimant's condition resulted from exposure outside of his employment, we need not look beyond the four corners of [Code § 65.2-400].

*Merillat Indus., Inc. v. Parks*, 15 Va. App. 44, 51, 421 S.E.2d 867, 870-71 (1992).

The commission noted the terms "It is possible" (June 4, 1990 report) and "I think the odds are" (September 13, 1990 report) employed by Dr. Marshall, as suggesting mere possibility and being insufficiently conclusive to constitute proof of the causal connection between Wells's employment and his disease. We disagree. Dr. Marshall described the source of the bacterium, the manner of its migration, and the usual route by which it invades the body. He eliminated alternative sources of infection and focused upon his conclusion that the infection derived from Wells's contact with sewage. The term "I think the odds are," indicates preponderating probability. It means more likely than not. We hold that in the context of Dr. Marshall's reports, it was an expression of professional certainty sufficient to constitute preponderance of the evidence, the standard of proof required by Code § 65.2-400.

For the foregoing reasons, the judgment of the commission is reversed and this case is remanded for entry of an award in favor of Wells.

*Reversed and remanded.*

Benton, J., and Elder, J., concurred.