COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Annunziata and Senior Judge Cole
Argued at Richmond, Virginia


VIRGINIA ELECTRIC & POWER COMPANY
                                         MEMORANDUM OPINION[*] BY
v.  Record No. 1927-96-2             JUDGE JAMES W. BENTON, JR.
                                            MARCH 11, 1997
OLA J. THORPE BOBBITT


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Kathryn Spruill Lingle (Midkiff & Hiner,
            P.C., on brief), for appellant.

            P. George Eliades II (Eliades & Butterworth,
            on brief), for appellee.



     Virginia Electric & Power Company contends that the

commission erred in ruling that the Company was required to pay

for medical treatment that Ola J. Thorpe Bobbitt received from

Dr. Mark E. deBlois.  We disagree and affirm the commission's

decision.

                                I.

     The commission's decision that the Company was responsible

for the treatment Bobbitt received from Dr. deBlois was based

upon the commission's consideration of the testimony and other

evidence in the record.  We review the commission's decisions

under well established principles.  We must uphold the

commission's factual findings when those findings are supported

by credible evidence.  See Code § 65.2-706; James v. Capitol

_____
      [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488

(1989).  Consistent with that principle are the following

additional principles of appellate review:

> We do not retry the facts before the
> Commission nor do we review the weight,
> preponderance of the evidence, or the
> credibility of witnesses.  If there is
> evidence or reasonable inference that can be
> drawn from the evidence to support the
> Commission's findings, they will not be
> disturbed by this Court on appeal, even
> though there is evidence in the record to
> support contrary findings of fact.

Caskey v. Dan River Mills, Inc., 225 Va. 405, 411, 302 S.E.2d

507, 510-11 (1983).

## II.

To implement these principles on appeal, we view the

evidence in the light most favorable to Bobbitt, who prevailed

before the commission.  See R.G. Moore Bldg. Corp. v. Mullins, 10

Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).  So viewed, the

evidence proved that in 1991 Bobbitt sustained compensable back

and shoulder injuries while employed by the Company.  Initially,

Bobbitt was treated by Dr. Thomas Butterworth.  Dr. Butterworth

operated on her left shoulder.  During the course of his

treatment for her back injury, Dr. Butterworth referred Bobbitt

to Dr. Kenneth I. Kiluk for a neurosurgical consultation.  Dr.

Kiluk ordered a myelogram, which "did not demonstrate any

evidence of [a] disc problem."  However, a CAT Scan indicated

"central disc herniation L5-S1."  Dr. Kiluk gave her injections,

but noted that he saw nothing to do "from a neurosurgical point

- 2 -

of view."

Dr. Butterworth provided epidural blocks and other treatment for Bobbitt's disc problems at L5-S1.  He also ordered MRIs in 1993 which showed Bobbitt had significant disc herniation. During these treatments, Bobbitt developed psychiatric problems and was referred to a psychiatrist.  She was hospitalized in 1993 for major depression that was related to her ongoing chronic pain.  During her hospitalization, she was sent to see Dr. Harold Young, another neurosurgeon.  Dr. Butterworth noted that Dr. Young "is talking about surgery."

In May of 1993, Dr. Butterworth discussed with Bobbitt the surgical option of removal of a disc and fusion.  His reports indicate that she was still in depression and very hesitant about surgery.  Bobbitt's psychiatric therapist noted that Bobbitt "had it out [with] Dr. Butterworth, who has now advised surgery."  In September of 1993, Dr. Butterworth stated that he had "nothing to offer [Bobbitt] except epidural and surgery."

Bobbitt continued to experience severe pain and became distrustful of Dr. Butterworth.  With the concurrence of Bobbitt's therapist, Bobbitt's psychiatrist referred Bobbitt to Dr. Harold Young, the neurosurgeon who had treated her while she was hospitalized.  After that referral, Bobbitt's psychiatrist retired from practice.  Another psychiatrist, Dr. S. K. Niazi, became her treating physician.  Dr. Niazi continued to treat Bobbitt for major depression, changed her medication, and

monitored her progress with Dr. Young.

Following his examination of Bobbitt, Dr. Young, who earlier was "talking about surgery," noted that she "has no focal neurological deficit but does have limitation of straight leg raising bilaterally and . . . she is not a good candidate for lumbar diskectomy for the degenerated disk." Dr. Niazi's notes indicate, however, that Bobbitt continued to experience pain and that she now was willing to reconsider surgery. Bobbitt told Dr. Niazi that she wanted another opinion concerning surgery and asked him for the name of an orthopaedic surgeon. Dr. Niazi's notes state that Dr. Young, the neurosurgeon, "cannot operate on her back."

In September 1994, Dr. Niazi wrote to Dr. deBlois, who is associated with the same clinic as Dr. Butterworth. He stated the following:

> The above named is my patient and has asked
> to be referred to you for a second opinion of
> her back problems. She has already scheduled
> an appointment with you. Also, she has asked
> that after you see her you then refer her
> back to her other physician for follow up
> care.

Dr. deBlois examined Bobbitt, noted that her last MRI was done in May 1993, and showed a large disc herniation. After Dr. deBlois ordered a repeat MRI, he recommended surgery.

Bobbitt returned to Dr. Niazi after her evaluation by Dr. deBlois. Dr. Niazi made the following notation of that visit:

> Reports that she has been doing somewhat
> better emotionally. She has gone to another
> [d]octor who is going to operate on her in 2

weeks.  She is going to have surgery on her
back and there is some fear about that but
patient is able to accept it and mostly
talked about those feelings in this session.
 We provided support therapy.  We will see
the patient after surgery.  Continue current
treatment plan.

Dr. deBlois performed the surgery two weeks after Bobbitt's visit to Dr. Niazi.  Dr. Niazi saw her after the surgery and noted that he was "continuing the current treatment plan, medications.  She was seen for supportive therapy and will [be] reevaluate[d] in four weeks."

III.

Code § 65.2-603 requires an injured employee to accept reasonable and necessary care occasioned by an occupational injury.  "Whether the employer is responsible for medical expenses . . . depends upon: (1) whether the medical service was causally related to the [compensable] injury; (2) whether such other medical attention was necessary; and (3) whether the treating physician made a referral to the patient."  Volvo White Truck Corp. v. Hedge, 1 Va. App. 195, 199, 336 S.E.2d 903, 906 (1985).  "Medical evidence . . . is subject to the commission's consideration and weighing."  Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991).

The Company does not dispute the causal relation between the injury and the surgery or the need for medical treatment. Moreover, the commission found, and credible evidence proved, that Dr. Niazi was Bobbitt's treating physician.  The Company

also does not contest that finding.  The Company contends that the evidence does not support the commission's conclusion that Bobbitt received a referral from Dr. Niazi to Dr. deBlois.  That argument is meritless.

On the evidence in the record, the commission found as follows:

> The Deputy Commissioner found that the treatment by Dr. deBlois is authorized because of a referral by the treating psychiatrist.  The employer argues that Dr. Niazi referred the claimant to Dr. deBlois only for a second opinion, not for treatment.  However, the record does not support this.  Initially, Dr. Niazi wrote that the claimant only wished to have a second opinion by Dr. deBlois, and wanted then to return to her neurosurgeon for follow-up care.  However, it is clear that the claimant reconsidered and acquiesced in Dr. deBlois' recommendation of surgery, which was opposed by Dr. Young but supported by her previous orthopedist, Dr. Butterworth.  Dr. Niazi's records indicate that he was aware of and consented to the claimant's decision to pursue orthopedic care and surgery with Dr. deBlois.  Therefore, the continued treatment and surgery by Dr. deBlois was with the knowledge and consent of an authorized treating physician, Dr. Niazi.

The commission's decision is based on abundant credible evidence.  Dr. Niazi's letter to Dr. deBlois is indisputedly a letter of referral of Bobbitt to Dr. deBlois.  Furthermore, the evidence clearly proved that Dr. Niazi learned at least two weeks prior to the planned surgery that Dr. deBlois would perform the surgery and that Bobbitt accepted the need for the surgery.  Dr. Niazi reported that he was providing support therapy and would continue with that therapy after surgery.  The direct evidence

- 6 -

thus proves that Dr. Niazi, Bobbitt's treating physician, made the referral, was aware of the planned surgery, acquiesced in the surgery, and planned to provide psychiatric support for Bobbitt as she prepared for surgery.  Both direct credible evidence and inferences that flow from the evidence prove Dr. Niazi never objected to surgery, encouraged Bobbitt to accept it, and continued to provide support to her.  Thus, the evidence proved he consented to the surgery.  Moreover, the record clearly established that the surgery was reasonable medical treatment. Indeed, it had been previously recommended by Dr. Butterworth.

Accordingly, we affirm the award.

<u>Affirmed</u>.

Cole, J., dissenting.

I respectfully dissent because I agree with Chairman Tarr's dissenting opinion finding that the medical treatment rendered by Dr. Mark E. deBlois was unauthorized.

Decisions of the commission as to questions of fact are conclusive and binding upon this Court if supported by credible evidence. However, when the facts are undisputed, as in this case, the sufficiency of the evidence then becomes one of law. Breckenridge v. Marval Poultry Co., 228 Va. 191, 196, 319 S.E.2d 769, 772 (1984); Wells v. Commonwealth Dept. of Transp., 15 Va. App. 561, 563, 425 S.E.2d 536, 537 (1993).

The claimant (Bobbitt) sustained an injury to her back on May 31, 1991, when she lifted a container while performing her work duty as a stock helper. She came under the care of Dr. Thomas R. Butterworth, Jr., an orthopedic surgeon, for treatment.

After two years of conservative treatment, a note in the medical records summarized Bobbitt's condition:

> Ms. Ola Bobbitt had an MRI at Chippenham Medical Center on May 13, 1993. This showed a large, central herniated disc at the L5-S1 level. She has continuous back and left leg pain. She is unable to bend or lift and is limited in walking, standing or sitting. . . .
>
> Her only option for treatment at this time is surgery. However, she is also suffering from severe depression at this time and is unable to make a decision regarding surgery.
>
> Her physical condition and severe depression make her unable to perform any type of work at this stage. Her prognosis is not optimistic at this time.

Bobbitt had some severe psychiatric problems caused in part by the accident, but also related to severe family problems. In a report to the employer on July 14, 1993, her psychiatrist, Dr. A. M. Masri, stated:

> Mrs. Bobbitt has remained under my care, has been seen on a weekly basis for supportive therapy. She has also continued to require medication for her severe disturbances of mood. On several occasions, she has displayed frankly manic affect, with pressured speech, flight of ideas, and inappropriate affective quality. Also, she has presented on several occasions severely depressed, reporting overt suicidal impulses, feelings of hopelessness. We were able with a great deal of support to keep her out of the hospital, but this is always a possibility.

Therefore, in the spring of 1993 Dr. Butterworth was Bobbitt's treating physician for orthopedic problems and Dr. Masri was the treating physician for psychiatric problems.

In a letter dated September 27, 1993, to the employer, Dr. Masri advised that he had referred Bobbitt to Dr. Harold Young, Chairman of Neurosurgery, Medical College of Virginia ("MCV"). Dr. Masri stated that he was in no way criticizing the care given by Dr. Butterworth, but that Bobbitt had developed strong negative feelings toward his treatment and focused her feelings upon Dr. Butterworth. Dr. Masri opined that this was not an unusual situation but did affect the prognosis and treatment outcome.

In a letter to the employer dated October 11, 1993, Dr.

Butterworth reported that Bobbitt thought of him as a "company doctor" and refused to have the prescribed epidurals. Dr. Butterworth stated that Bobbitt's psychiatrist wanted to send her to Dr. Young at MCV for his opinion. Dr. Butterworth stated that Dr. Young is a respected neurosurgeon and suggested that the last MRI be sent to him. Therefore, in October of 1993, the treating orthopedic physician was changed to Dr. Young with the approval of Dr. Butterworth, Dr. Masri, and the employer.

Shortly thereafter Dr. Masri retired from his psychiatric practice and Dr. S. K. Niazi became Bobbitt's psychiatric treating physician. Dr. Niazi first saw Bobbitt for evaluation on April 19, 1994. Dr. Niazi noted Bobbitt's severe family problems, depression and the multiple physical problems due to pain in her back, herniated discs, and shoulder pain.

Drs. Young and Niazi continued as treating physicians. In an office note dated June 20, 1994, Dr. Niazi recorded that Bobbitt is very upset; she is in physical pain; she feels like her neurosurgeon is not paying enough attention to her problem; and he cannot operate upon her back and she wants another opinion. Bobbitt asked Dr. Niazi for the names of some orthopedic surgeons. The record does not reflect that Dr. Niazi gave Bobbitt any names.

Bobbitt continued to have regular visits with Dr. Niazi. His office notes on August 8, 1994, indicate Bobbitt is depressed and has pain. Bobbitt stated she wanted to switch over to

another neurosurgeon because she felt she was not getting enough attention at MCV. Dr. Niazi's office notes on August 31, 1994, also indicate that Bobbitt is not very happy with her current neurosurgeon and wants to make a change. At Bobbitt's September 12, 1994 visit, Dr. Niazi did not record any complaint against Dr. Young, and Dr. Niazi reported that Bobbitt was feeling better. Dr. Niazi noted that Bobbitt was more stable in mood. Dr. Niazi asked Bobbitt to continue her medications and to return in one month.

Without any explanation in the record, four days later on September 16, 1994, Dr. Niazi wrote the following letter to Dr. Mark deBlois, an orthopedic surgeon, concerning Bobbitt:

> The above named is my patient and has asked
> to be referred to you for a second opinion of
> her back problems. She has already scheduled
> an appointment with you. Also, she has asked
> that after you see her you then refer her
> back to her other physician for follow up
> care.

At the October 10, 1994 session, Dr. Niazi's office notes indicate that "[Bobbitt] is going to have surgery on her back and there is some fear about that but patient is able to accept it and mostly talked about those feelings in this session."

The record reflects that Bobbitt was admitted to Chippenham Medical Center on October 19, 1994, for the taking of her history and medical examination. On October 24, 1994, Dr. deBlois operated on Bobbitt for lower back and left leg pain.

On November 7, 1994, Bobbitt again visited Dr. Niazi.

According to his office notes, Bobbitt was very depressed, anxious, and crying at this visit.  She reported she had back surgery two weeks ago.  She reported that she was not feeling any better and actually had more pain than before the surgery.  She wanted Dr. Niazi to prescribe antibiotics for her because her husband thought she should have them after back surgery.

To support its argument that Dr. deBlois became an authorized physician, the commission reasoned:

1.   The claimant reconsidered and acquiesced in Dr. deBlois's recommendation for surgery.

2.   Dr. Niazi's records indicate that Dr. Niazi was aware of and consented to the claimant's decision to pursue surgery with Dr. deBlois.

3.   Therefore, the continued treatment and surgery by Dr. deBlois was with the knowledge and consent of the authorized physician.

The record establishes that Dr. Niazi was aware of and had knowledge that Dr. deBlois was going to perform surgery upon Bobbitt's back.  On September 16, 1994, Dr. Niazi had requested a second opinion from Dr. deBlois.  On October 10, 1994, according to Niazi's office notes, Bobbitt advised him that she had gone to another doctor and that she was to be operated upon in two weeks. However, there is nothing in the record to prove that Dr. Niazi consented to the surgery.  Moreover, whether he consented is totally irrelevant to the issue in this case whether Dr. deBlois became an authorized physician.

In order to hold an employer liable for medical expenses, the claimant must prove that the service was causally related to

the industrial accident; that it was necessary; and that the treating physician made a referral to the patient. <u>Shenandoah Prods., Inc. v. Whitlock</u>, 15 Va. App. 207, 211, 421 S.E.2d 483, 485 (1992). Without a referral from an authorized treating physician, the treatment by an unauthorized physician is not the responsibility of the employer. <u>Id.</u> at 212, 421 S.E.2d at 485. There are several exceptions to this rule not present in this case. <u>See</u> Code § 65.2-603(C).

When a claimant changes physicians without prior authorization of employer, insurance carrier, or commission, he must pay for the medical treatment rendered by the second physician. <u>Mitchell v. Anchor Warehouses Inc.</u>, 49 O.I.C. 223, 226 (1967); <u>Martin v. Miller & Rhoads, Inc.</u>, 34 O.I.C. 19, 20-21 (1952).

Whether Dr. Niazi was aware of, had knowledge of, or consented to Dr. deBlois's surgery are irrelevant. The issue is whether Dr. Niazi referred Bobbitt to Dr. deBlois for treatment. The effect of such a referral, had one been made, would have been to divest Dr. Young as the treating physician in the area of orthopedics and would have produced an intolerable situation concerning who was responsible for providing necessary orthopedic services to the claimant. To Dr. Niazi's good credit, he did not do this. He requested a second opinion which did not change the status of anyone. He could use the information obtained from that opinion to determine if bad orthopedic practices were the

cause of any of the psychiatric problems of his patient. If so, he could pass that on to the employer, carrier, or commission for appropriate action.

A simple case will illustrate the fallacy of the commission's ruling. If Bobbitt had walked into Dr. Niazi's office, as she did here, and told him that she had employed Dr. deBlois to operate on her back, what should Dr. Niazi's response have been? He could have advised her to immediately get permission for the operation from the employer, the insurance carrier, or the commission. But, he is not responsible for giving legal advice and may not have felt competent to do so. He could have said I approve of that and agree that is the proper thing to do. This still would not have been a referral, and Dr. Young would remain the treating physician. Bobbitt had every right to employ Dr. deBlois to perform the operation. Dr. Niazi had no right to interfere with Bobbitt's choice of a physician. The only difference is that if she chooses an unauthorized physician, she, not the employer, is responsible for paying for the services rendered.

When you dissect the majority opinion, it says that Dr. Niazi consented to the surgery because (1) he never objected to it; (2) he encouraged Bobbitt to accept surgery; and (3) he continued to provide psychiatric support to her for the reasons previously stated. All of these things are irrelevant. Bobbitt had a right to change physicians at anytime, subject only to the

- 14 -

fact that she would have to pay for the services of an unauthorized physician if she chose one.  The fact that Dr. Niazi did not object, encouraged Bobbitt to accept it, and continued to provide psychiatric support do not amount to a referral.  There is a big difference in the meaning of consent and a referral.  Again, I would point out that there is absolutely no evidence in the record that Dr. Niazi consented to Bobbitt changing to Dr. deBlois and having the surgery.  For the reasons stated, I would reverse the decision of the commission.