**Renita D. BELL, Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO and Regional Transportation District, Respondents.**

**No. 03CA1161.**

Colorado Court of Appeals,
Div. V.

April 22, 2004.

As Modified on Denial of Rehearing
May 20, 2004.

H.A. Lowe & Associates, LLC, Horace A. Lowe, Denver, Colorado, for Petitioner.

No Appearance for Respondent Industrial Claim Appeals Office.

Erica A. Weber, Denver, Colorado, for Respondent Regional Transportation District.

Opinion by Judge DAILEY.

Renita D. Bell (claimant) seeks review of a final order of the Industrial Claim Appeals Office (Panel) that upheld a hearing officer's decision disqualifying her from the receipt of unemployment benefits upon her separation from employment with the Regional Transportation District (employer). The disqualification was imposed pursuant to § 8–73–108(5)(e)(VI), C.R.S.2003 (separation from employment due to insubordination). We set aside the Panel's order and remand for further proceedings.

Following an evidentiary hearing, the hearing officer found, as the proximate cause of claimant's job separation, claimant's refusal to comply with employer's instructions to return to work after a disciplinary suspension and to sign a job performance agreement.

As to the underlying circumstances, the hearing officer found that (1) employer reasonably suspended claimant for five days because of valid and genuine concerns over claimant's job performance; (2) employer reasonably requested claimant to agree to a "performance contract and last chance agreement" in order to return to work; (3) the agreement required claimant to timely complete her tasks, cooperate while on the job, maintain confidentiality of the business, promptly answer the phone, and keep accurate records; (4) in requesting claimant to agree to perform her job satisfactorily and in a timely fashion, employer made no unreasonable demands; (5) claimant would have been permitted to return to work if she had returned to work following her suspension and agreed to perform her work properly; and (6) claimant was discharged after volitionally failing to return to work and refusing to sign the performance agreement.

Based on these findings, the hearing officer ruled that claimant was at fault for her separation from employment, and imposed a disqualification from unemployment benefits pursuant to § 8–73–108(5)(e)(VI). On review, the Panel affirmed, concluding that the hearing officer's factual findings were supported by the record and that there was nothing objectively unreasonable about an employer instructing an employee to agree to properly perform her job duties.

I.

Initially, we reject claimant's challenge to the hearing officer's finding that employer had genuine and valid concerns about certain aspects of claimant's job performance. Although conflicting evidence was presented, the hearing officer's finding is supported by substantial evidence in the record. Accordingly, we will not disturb it on review. See § 8–74–107(4), C.R.S.2003; Tilley v. Indus. Claim Appeals Office, 924 P.2d 1173, 1177 (Colo.App.1996).

II.

We agree, however, that the Panel erred in concluding that the disqualifying circumstances of § 8–73–108(5)(e)(VI) exist in this case.

Section 8–73–108(5)(e)(VI) provides for disqualification from unemployment benefits when a job separation results from insubordination, a term that includes "[d]eliberate disobedience of a reasonable instruction of an employer."

As noted by claimant, an objective standard must be applied in analyzing a disqualification under § 8–73–108(5)(e)(VI) for insubordination. Under that standard, the Panel must use its independent judgment to determine whether, under the particular facts and circumstances of each case, the request that claimant refused was one that a reasonable person would have refused. Rose Med. Ctr. Hosp. Ass'n v. Indus. Claim Appeals Office, 757 P.2d 1173, 1174 (Colo.App. 1988); cf. Davis v. Indus. Claim Appeals Office, 903 P.2d 1243, 1244–45 (Colo.App.1995)(similar analysis used to assess disqualification under § 8–73–

108(5)(e)(XIV), C.R.S.2003, for rude, insolent, or offensive behavior).

In determining this issue, the Panel makes an ultimate legal conclusion based on undisputed evidence or established findings of material fact. *See Cole v. Indus. Claim Appeals Office,* 964 P.2d 617, 618–19 (Colo.App.1998)(reviewing fault and disqualification determinations); *Bd. of Water Comm'rs v. Indus. Claim Appeals Office,* 881 P.2d 476, 478 (Colo.App.1994)(same).

■ On appeal, we are free to draw our own conclusions from relevant documents in the record, *Colo. Dep't of Pers. v. Alexander,* 970 P.2d 459, 467 (Colo.1998), and we review de novo the Panel's ultimate legal conclusion. *See Coates, Reid & Waldron v. Vigil,* 856 P.2d 850, 856 (Colo.1993)("the correctness of a legal conclusion drawn by the Panel from undisputed facts is a matter for the appellate court, and where the decision of the Panel is based upon an improper application of the law, a reviewing court may set aside the [order]").

Here, the hearing officer and the Panel concluded that claimant was disqualified from receipt of unemployment benefits because she (a) failed to sign a performance agreement after employer had reasonably requested her to do so and (b) failed to return to work. We will address these points in turn.

### A.

■ With respect to the performance agreement, we first observe that claimant was required under the agreement not only to perform her job satisfactorily, but also to waive significant legal protections and rights. In this latter regard, the agreement required claimant to (1) admit she had engaged in substandard performance of duties in violation of the policies of the salaried employees' handbook; (2) be deemed to have submitted an irrevocable resignation from employment if she violated the agreement in the next six months; (3) waive any administrative appeal normally afforded salaried employees with respect to such resignation and consequent termination from employment; and (4) release, acquit, and forever discharge employer and its agents from any and all claims,

causes, and causes of action she had or may have against them.

We also note that, by its terms, the agreement was but a means of settling outstanding differences between the parties. In this regard, the agreement recited that (1) claimant had the right to contest her then pending discipline pursuant to the provisions of employer's salaried employees' handbook; (2) claimant was voluntarily entering into the agreement in return for not being terminated from employment; (3) both parties recognized that the resolution of the then pending employment dispute "cannot be reasonably predicted and that further administrative action will require expenditure of significant resources by all parties"; and (4) both parties were entering into the agreement "solely for the purpose of avoiding further administrative action."

Thus, it is apparent that the agreement was proposed as an alternative to, and not as an additional ground for, termination of claimant's employment. In such circumstances, a reasonable person in claimant's position could either (1) sign the agreement or (2) not sign the agreement and take his or her chances in then pending disciplinary proceedings. The second option is reasonable because it keeps intact all available employee protections regarding a present employment dispute and preserves all potential causes of action against employer and its agents.

Consequently, while, as the hearing officer found, employer could reasonably request claimant to consider settling their differences, we conclude that, because claimant was not obliged to settle, her refusal to sign the settlement agreement could not be insubordination. *See Seymore v. Reader's Digest Ass'n,* 493 F.Supp. 257, 265 (S.D.N.Y. 1980)("acts done in defense of an employee's contract rights ... are not insubordination and do not justify termination of employment"); *see also Bigda v. Fischbach Corp.,* 898 F.Supp. 1004, 1017 (S.D.N.Y.1995) ("employees' pursuits of their contract rights cannot constitute disloyalty"), *aff'd,* 101 F.3d 108, 1996 WL 107342 (2d Cir.1996); *cf. Schwarze v. Solo Cup Co.,* 112 Ill.App.3d 632, 68 Ill.Dec. 228, 445 N.E.2d 872, 876 (1983)("It has long been recognized that a discharged

employee need not accept an offer of reemployment where to do so would constitute a disadvantag[e]ous renegotiation of his original contract or an abandonment of his rights and remedies thereunder.").

For these reasons, we conclude that the Panel improperly upheld the hearing officer's denial of benefits by treating claimant's refusal to sign the performance agreement as insubordination.

■ We emphasize the limited nature of our holding. When an employee's job performance gives rise to a "last chance" settlement agreement, such as the one proposed here, and the employee refuses to sign the agreement, the employee may well be disqualified from receiving unemployment benefits. The disqualification may be premised, not on the refusal to sign the agreement, but on the actions and omissions that gave rise to the employer's original dissatisfaction with the employee's performance. *See* § 8–73–108(5)(e)(XX), C.R.S.2003 (benefits withheld when separation of employment was for failing to meet established job performance standards).

Although employer asserted as much here, the hearing officer did not address this assertion. Consequently, a remand is necessary to permit the hearing officer to further consider the appropriateness of disqualifying claimant from receipt of benefits because of her allegedly poor job performance.

## B.

We reject employer's contention that the Panel's decision may be affirmed based solely on claimant's failure to return to work after suspension. Nothing in the hearing officer's ruling intimates that she found this issue to be separable from, or sufficient to support a disqualification apart from, claimant's failure to sign the performance agreement. And although the evidence is conflicting, claimant testified that she did not return to work because she was led to believe that she would be terminated unless she signed the agreement, which she was unwilling to do.

In light of this evidence and the lack of more explicit findings, we are unable to conclude that the hearing officer would have denied benefits on this ground alone. Hence, on remand the hearing officer should consider this issue as well.

## III.

In light of our disposition of this appeal, we need not address claimant's remaining contentions of error.

Accordingly, the order is set aside, and the case is remanded for further proceedings in accordance with the views of this opinion.

Judge RUSSEL concurs.

Judge VOGT dissents.

Judge VOGT dissents.

I respectfully dissent.

The Colorado Employment Security Act, § 8–70–101, et seq., C.R.S.2003, delegates to the hearing officer and the Panel the responsibility for applying the standards adopted by the General Assembly to determine whether, under all the circumstances of the case, a particular separation from employment should result in an award of benefits. Given the scope and purpose of the statutory scheme, our courts have refused to engraft civil wrongful discharge case law onto the Act. *See Keil v. Industrial Claim Appeals Office*, 847 P.2d 235 (Colo.App.1993)(holding that principles concerning wrongful discharge in civil case law are not determinative of entitlement and fault issues in an unemployment compensation benefits case).

Here, after a two-day evidentiary hearing, the hearing officer concluded that employer's instruction regarding the performance agreement was reasonable in light of its "valid concerns about the claimant's job performance." In her appeal to the Panel, claimant focused primarily on disputing the asserted deficiencies in her job performance, but also argued that the performance agreement was unconscionable and coercive. The Panel disagreed, concluding, as did the hearing officer, that there was nothing objectively unreasonable in employer's request.

In my view, the Panel correctly interpreted and applied the statutory standard it is responsible for applying to the circumstances

of this case. For purposes of determining disqualification from unemployment benefits, "insubordination" is defined as including "[d]eliberate disobedience of a reasonable instruction of an employer." Section 8–73–108(5)(e)(VI), C.R.S.2003. The Panel found the instruction reasonable under all the circumstances, and there was no dispute that claimant deliberately did not obey the instruction.

The majority does not disagree that employer "could reasonably request claimant to consider settling their differences." However, it then concludes that her refusal to comply with employer's request that she sign a settlement agreement did not constitute insubordination. I disagree with the latter conclusion for three reasons.

First, in support of its conclusion, the majority relies on three cases from other jurisdictions that involve civil claims for wrongful discharge or breach of an employment agreement. I view these decisions as having limited applicability to a determination whether a separation from employment should result in an award of unemployment benefits under Colorado's statutory scheme. *See Keil v. Industrial Claim Appeals Office, supra.*

Second, I interpret the performance agreement as a reasonable proposal to compromise a disputed issue, not as an improper attempt to require claimant to "waive significant legal protections and rights," as the majority characterizes it.

As the majority recognizes, the hearing officer's finding that employer had genuine and valid concerns about claimant's job performance is supported by substantial evidence in the record. After acknowledging that claimant had the right to contest the discipline imposed for her substandard performance in accordance with employer's handbook and that neither side could predict the outcome if she did so, the agreement provides that both employer and claimant will give up certain rights. Employer agrees not to impose any further disciplinary action beyond the five-day suspension for the performance issues, and claimant agrees that, if she does not comply with the job performance obligations in the agreement, she has given up her right to any internal administrative appeal she would otherwise have.

Notably, the agreement does not require that claimant forgo seeking workers' compensation benefits or agree to some other condition that has been recognized as improper under Colorado law. *See Vaske v. DuCharme, McMillen & Associates, Inc.,* 757 F.Supp. 1158 (D.Colo.1990). I do not view the agreement as either illegal or unconscionable, and am aware of no authority that would prevent an employer and an employee from entering into such agreement.

Third, and perhaps most important, upon review of the entire record, I am persuaded that neither employer's termination of claimant nor the Panel's subsequent determination that she was not entitled to unemployment benefits was unfair under all the circumstances.

The majority suggests that claimant should have had the option of not signing the agreement and taking her chance in then pending disciplinary proceedings. The record permits a reasonable inference that she in fact was given such an opportunity, but declined it.

Claimant's supervisor testified that, when claimant was suspended in September 2002 based on job performance deficiencies that had previously been brought to her attention, she was asked to sign a performance contract. She disputed the terms and employer agreed to modify it. Thereafter, a second contract, with one "bullet item" removed, was presented to her. When she again refused to sign, she was not immediately fired. Rather, because she had already filed an administrative appeal, employer decided to go forward with the appeal hearing to give her a final opportunity to go through the appeal process. Claimant was told she should come back to work pending the outcome of the appeal. When claimant did not return to work, the appeal hearing was converted to a pretermination hearing.

A transcript of that internal administrative hearing is also included in the record. The transcript reflects that the employer's hearing officer asked at the outset to hear "both sides of the issue." After the supervisor stated employer's position, claimant simply asked the hearing officer to confirm that she

was being terminated for not signing a performance contract agreement and for missing two days of work. When the hearing officer did so, claimant responded: "That's all I needed to know. We really don't have anything else to talk about." The hearing officer then explained that he had brought her in "to hear both sides to determine if the termination would stand" and "that is the reason for this hearing." Claimant declined the offer, stating "I've had my questions answered. I'm done." The hearing officer again clarified that claimant was "not terminated until the decision is final from this hearing.... This is a hearing to determine whether you are [going to] be terminated."

At the subsequent unemployment compensation hearing, the employer's hearing officer testified that his role at the administrative hearing was to make a determination of whether termination was appropriate or not; that he had the power to overturn whatever had previously been decided; and that he was "expecting to hear both sides of the issue so [he] could make a decision."

This record was before the Panel when it made its determination. In my view, the Panel applied the correct legal standard and appropriately considered all the facts and circumstances of the case in determining that claimant was disqualified from receiving unemployment benefits. I would therefore affirm its order.