COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Humphreys and Petty
Argued at Richmond, Virginia


CHARLES WILLIAMSON

                                                            OPINION BY
v.        Record No. 1425-09-2                  JUDGE ROBERT P. FRANK
                                                            MARCH 23, 2010
VIRGINIA EMPLOYMENT COMMISSION AND
  MILLS HEATING AND AIR CONDITIONING, INC.


FROM THE CIRCUIT COURT OF APPOMATTOX COUNTY
Richard S. Blanton, Judge

Jeremy P. White (Lillia Suh; Virginia Legal Aid Society, Inc., on
briefs), for appellant.

Elizabeth B. Peay, Assistant Attorney General (William C. Mims,
Attorney General, on brief), for appellee Virginia Employment
Commission.

No brief or argument for appellee Mills Heating and Air
Conditioning, Inc.


The Virginia Employment Commission (Commission) denied a claim by Charles

Williamson (appellant) for unemployment benefits from Mills Heating and Air Conditioning,

Inc. (Mills) under Code § 60.2-618(2), finding appellant was disqualified for benefits because of

insubordination and misconduct.  Appellant appealed that decision to the circuit court, which

affirmed the Commission's decision.  For the reasons stated, we find the trial court erred in

affirming the Commission.

BACKGROUND

Like the circuit court, we must "'consider the evidence in the light most favorable to the

finding by the Commission.'"  Wells Fargo Alarm Servs. v. Va. Empl. Comm'n, 24 Va. App.

377, 383, 482 S.E.2d 841, 844 (1997) (quoting Va. Empl. Comm'n v. Peninsula Emergency

Physicians, Inc., 4 Va. App. 621, 626, 359 S.E.2d 552, 554 (1987)). "If the commission's findings are supported by the evidence, they are binding on appeal." McNamara v. Va. Empl. Comm'n, 54 Va. App. 616, 624, 681 S.E.2d 67, 70 (2009) (citation omitted). However, when the facts are undisputed, their interpretation is a matter of law. Wells v. Commonwealth, Department of Transportation, 15 Va. App. 561, 563, 425 S.E.2d 536, 537 (1993). We are not bound by the Commission's determination of legal questions. Cibula v. Allied Fibers & Plastics, 14 Va. App. 319, 324, 416 S.E.2d 708, 711 (1992), aff'd, 245 Va. 337, 428 S.E.2d 905 (1993).

Appellant was a sales coordinator for Mills from October 2003 until August 8, 2007. Ordinarily, he used his personal vehicle for work, only using a company vehicle infrequently, "less than 1% of the time." On July 13, 2007, Mills proposed a revised company policy[1] which addressed the use of company vehicles, which stated:

> All violations incurred while operating a company vehicle are the responsibility of the operator and such operator, whether civil or criminal in nature, will pay all fees, fines or penalties. **Mills Heating & Air assumes no liability whatsoever for the careless and/or negligent acts of the operators of company vehicles.** You are to operate the vehicle and drive vehicles only to designated and approved locations. **No exceptions!** Anyone involved in an accident at which they are at fault may be required to pay the deductible as described in our current vehicle insurance policy (currently $500 but subject to change from time to time).
>
> Attached, you will find the latest "Civil Remedial Fees" as adopted by the State of Virginia and the current vehicle policy as described in the Company handbook. As described above all fees, fines or penalties are the responsibility of the operator of the vehicle. Please read this memo and attached "Civil Remedial Fees" and sign below, acknowledging that you have read this memo and understand its content and will abide by all company vehicle policies now in place or that might be enacted in the future.

---

[1] The original policy which appellant signed was not in evidence although Mills testified the revised policy was similar to the original. The "major change" addressed the insurance deductible.

Mills subsequently issued an attachment to the July 13, 2007 policy, further delineating the driver's responsibilities as to the deductible:

> The memo states "Anyone involved in an accident at which they are at fault may be required to pay the deductible as described in our current vehicle insurance policy (currently $500 but subject to change from time to time)." This attachment will define under what conditions the deductible will be required.
>
> Anyone charged with DUI, reckless driving, speeding, improper use of a vehicle or causing an accident while driving in a careless manner will be required to pay the deductible. If an accident occurs while operating a company vehicle using normal and reasonable care, you will not be expected to pay the deductible.
>
> Management will address each case individually and assess necessary action accordingly.

Appellant declined to sign the policy, indicating the policy contained "too many unknowns" and was "worded too loosely." He was concerned the terms "fault" or "reckless" were not defined in the policy statement.[2]

He expressed concern that the policy allowed Mills to decide whether he would pay the deductible and that decision was final. Mills responded that determination would depend on the police officers or witnesses as to whether appellant was reckless or irresponsible. Appellant's discussion with Mills concerning the policy occurred over a period of several weeks.

Appellant, based on his concerns, and after consulting with an attorney and an insurance underwriter, submitted a revision to the policy, which read:

> Fee, fines, or penalties – civil remedial fees imposed pursuant to Section 46.1-206.1 of the Code of Virginia, and other fees, fines and penalties referred to in that Code section – incurred by the operator while operating a company vehicle, are the exclusive responsibility of the operator. Mills Heating & Air assumes no liability for any such fines, fees and/or penalties.

---

[2] Appellant was the only Mills employee who did not sign the policy, although another employee expressed some concerns prior to signing.

Anyone charged with DUI, reckless driving, speeding, improper use of a vehicle, or causing an accident as a willful result of the latter, may be required to pay the deductible as described in our vehicle insurance policy. This deductible is currently $500 but is subject to change. At the time of such a change, you will be notified and your written acknowledgement of the new deductible will be required.

On August 8, 2007, appellant met with Mills and Mills rejected this proposal.[3] While acknowledging there was "not much of any distinction," appellant was told, "you do not write company policy . . . ." L.G. Mills, owner and president of Mills, testified what she found unacceptable was "not so much the verbage . . . [but] the fact he is not allowed to write company policy." Appellant suggested that as an alternative, he would not drive company vehicles. Rejecting appellant's proposals, Mills discharged appellant.

At the hearing before the appeals examiner, appellant testified he was concerned that the use of the term "fault" includes his foot slipping off the brake, causing an accident. He further expressed a concern that "reckless" might be interpreted to include simple negligence.

Appellant testified an attorney and an insurance underwriter, upon reviewing the proposed policy, advised him not to sign it because it exposed him to "too much liability." He was particularly wary of this policy because of a prior incident where he accidentally ran over a company laptop computer. Mills refused to cover the loss with its insurance. Appellant paid over "thousands of dollars" to replace the computer. From this experience, appellant concluded Mills may very well require him to pay for an act that was not intentional.

The commission deputy denied benefits. On appeal to the appeals examiner, the appeals examiner reversed the deputy, concluding appellant's refusal to sign the policy statement was not

---

[3] Appellant's proposal removed the language that he would be bound by all vehicle policies "that might be enacted in the future," that Mills could "address each case individually and assess necessary action," and Mills "assumed no liability for the careless or negligent acts" of its employees. In the final paragraph, he substituted "willful" for "careless." He also added language that employees would be notified if the deductible was changed.

"tantamount to misconduct . . . ." Appellant's actions "cannot be construed as a willful disregard of the obligations and duties owed to the employer." The examiner characterized assessing the deductible against the employee "as a way to potentially punish an employee that it deems to be at fault." He concluded that while an employer may impose certain disciplinary actions, this "monetary punishment goes beyond the norm of these situations," noting it was within the employer's sole discretion to impose this penalty. The examiner, finding no misconduct, awarded appellant benefits.

Employer appealed this decision to the Commission, which reversed the appeals examiner, concluding Mills' policy was reasonable and appellant's failure to sign the policy constituted misconduct. The Commission also concluded appellant did not establish mitigating circumstances. Therefore, the Commission denied benefits.

Appellant appealed that decision to the circuit court. The circuit court affirmed the Commission's decision, finding Mills' policy was reasonable, that it had the right to establish policies, and that appellant was guilty of misconduct.

This appeal follows.

ANALYSIS

By statute, "the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud,[4] shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." Code § 60.2-625(A) (footnote added).

Whether the Commission properly disqualified appellant under Code § 60.2-618 is a mixed question of law and fact. Shuler v. Virginia Empl. Comm'n, 9 Va. App. 147, 149, 384 S.E.2d 122, 124 (1989). "Therefore, a finding of disqualification does not enjoy the deference

---

[4] No fraud has been alleged.

accorded a finding of fact, but is subject to judicial review." Whitt v. Race Fork Coal Corp., 18 Va. App. 71, 73, 441 S.E.2d 357, 358 (1994).

On appeal, appellant contends the trial court erred, as a matter of law, in concluding the policy statement was reasonable and that appellant was guilty of misconduct in not signing the policy. We agree with appellant.

The legislature intended unemployment benefits to be paid only to those who find themselves unemployed "without fault on their part." Israel v. Va. Empl. Comm'n, 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988) (citation omitted). Furthering this policy goal, Code § 60.2-618(2)(a) prohibits benefits "if the Commission finds such individual is unemployed because he has been discharged for misconduct connected with his work."

Among other things, misconduct involves an intentional violation of "'a company rule reasonably designed to protect the legitimate business interests'" of the employer. Brady v. Human Res. Inst., 231 Va. 28, 32, 340 S.E.2d 797, 799 (1986) (quoting Branch v. Va. Empl. Comm'n, 219 Va. 609, 611, 249 S.E.2d 180, 182 (1978)). The very adoption of a rule by an employer "defines the specific behavior considered to harm or to further the employer's interests." Va. Empl. Comm'n v. Gantt, 7 Va. App. 631, 634, 376 S.E.2d 808, 811, aff'd on reh'g en banc, 9 Va. App. 225, 385 S.E.2d 247 (1989). "By definition, a violation of that rule disregards those interests." Id.

> The employer's rule, of course, must advance "legitimate" business interests. Brady, 231 Va. at 32, 340 S.E.2d at 799 (citation omitted). To be legitimate, however, an employer's rule need not be a model of workplace governance or aspire to what some might view as best business practices. It need only be a reasonable effort by an employer to manage its workforce and to enforce its own expectations of workplace order. In this context, legitimate simply means *not* illegitimate.

Va. Empl. Comm'n v. Trent, 55 Va. App. 560, 569, 687 S.E.2d 99, 103-04 (2010) (other citations omitted) (emphasis in original). In addition, the employer bears the burden of proof to

show employee committed misconduct.  <u>Bell Atlantic v. Va. Empl. Comm'n</u>, 16 Va. App. 741, 743, 433 S.E.2d 30, 32 (1993).

Our first task is to determine whether Mills' policy is "reasonably designed to protect [its] legitimate business interests." <u>Branch</u>, 219 Va. at 611, 249 S.E.2d at 182.  Is the rule a "reasonable effort . . . to manage its workforce and to enforce its own expectations of workplace order[?]" <u>Trent</u>, 55 Va. App. at 569, 687 S.E.2d at 104.

Appellant argues the policy is unreasonable because it goes further than simply governing employee's conduct while operating company vehicles.  He maintains the policy shifts employer's financial liability to the employee in an overbroad and unclear manner.  He further points to the absolute power of the employer to determine fault and to increase the amount of the deductible for which an employee may be responsible.[5]

Appellant maintains the policy statement would require him to pay the deductible even if a traffic violation was occasioned by employer's fault.  This policy, appellant argues, requires employee to waive significant legal protections and rights, it forfeits employee's contract rights, and it far exceeds the duties and obligations owed an employer.

The Commission found the vehicle policy was reasonable in that it protected employer's interests by establishing reasonable policies regarding the operation of its vehicles.  However, as argued by appellant, we conclude the policy far exceeded employer's interest in the operation of its vehicles.

The contested portions of the policy can reasonably be interpreted to absolve Mills from liability or responsibility for "all violations" incurred while the employee is operating a company

---

[5] While appellant contends that being "charged" with an offense, as opposed to being convicted, should not trigger an employee being assessed the deductible, this same language was contained in his proposal revision.  Since he would have signed the policy containing the revision, he cannot complain that this language is unreasonable.

vehicle and shifts the financial and legal responsibility to the employee. This responsibility includes payment of all fees, fines, and penalties. This "all violations" language is not limited to an accident nor payment of the insurance deductible. A separate sentence addresses payment of the employer's deductible as follows: "Anyone involved in an accident at which they are at fault may be required to pay the deductible . . . ." The attachment only clarifies the language involving payment of the deductible resulting from an accident. It does not modify the policy charging the employee with fees, fines, and penalties arising from any violations incurred while operating a company vehicle.

Unlike the all-inclusive language of Mills' policy, i.e. "all violations," appellant's proposed changes limited his exposure to the civil remedy fees imposed by Code § 46.2-206.1.[6] This statute is limited to driving under suspension or revocation, reckless driving, driving while intoxicated, and any other misdemeanors or felony convictions related to the operation of motor vehicles.

Here, the policy unreasonably shifts Mills' financial liability to its employees even if a violation is the result of Mills' fault, such as inspection, equipment, licensing or registration violations. The proposed policy further binds all employees to "any policies now in place or that might be enacted in the future." We find this demand is equally unreasonable. One who agrees to abide by an undisclosed future policy as a condition of continued employment would be foolhardy.

Included in the policy is a renunciation by Mills of any liability for careless or negligent acts of the operator of company vehicles. Appellant argues this provision, among others, is a waiver of legal rights and protections. Appellant contends this provision eliminates the

---

[6] While appellant referred to Code § 46.1-206.1, it is clear he meant Code § 46.2-206.1, which was repealed by 2008 Va. Acts, cc. 656-57, effective March 27, 2008.

application of tort law in determining liability between appellant and Mills. He suggests that if he and Mills are joint tortfeasors, this provision would bar Mills' liability. We again agree.

If two or more persons are negligent and if the negligence of each proximately causes another's injury, each tortfeasor is liable for the injury. Sullivan v. Robertson Drug Co., 273 Va. 84, 92, 639 S.E.2d 250, 255 (2007). Further, "[t]he right to contribution is based upon the equitable principle that where two or more persons are subject to a common burden, it shall be borne equally." Nationwide Mut. Ins. Co. v. Minnifield, 213 Va. 797, 800, 196 S.E.2d 75, 77-78 (1973). A right of contribution against a joint tortfeasor lies when one wrongdoer has paid or settled a claim not involving moral turpitude for which other wrongdoers also are liable. Id. at 798, 196 S.E.2d at 76. Thus, we conclude this provision waives appellant's right of contribution against Mills if they were joint tortfeasors, rendering it an unreasonable demand.

The Court of Appeals of Colorado addressed this very issue, i.e., the reasonableness of employer's policy. Bell v. Indus. Claim Appeals Office, 93 P.3d 584 (Colo. Ct. App. 2004). Claimant was denied unemployment benefits by the Industrial Claim Appeals Office for her failure to comply with her employer's instructions to sign a job performance agreement. Id. at 585. As a condition of claimant returning to work after an unsatisfactory job performance, claimant was required to agree to a "performance contract and last chance agreement." Id. The agreement required claimant to properly perform her job satisfactorily, but also to waive any administrative appeal normally afforded employees for termination. Id. Claimant was also required to waive any claims she may have against the employer. Id.

The Colorado Court of Appeals found these provisions to be unreasonable, finding claimant was required to "waive significant legal protection and rights." Id. at 586. That court concluded claimant was not insubordinate by refusing to sign the agreement and awarded claimant unemployment benefits. Id. at 587.

- 9 -

Like <u>Bell</u>, the contested portions of the proposed policy here required appellant to waive significant legal protections and rights. We therefore conclude the policy is not "reasonably designed to protect the legitimate business interests" of Mills. It does not regulate an employee's behavior but improperly shifts Mills' financial and legal responsibilities to its employees.[7] Therefore, under <u>Branch</u>, we conclude, as a matter of law, appellant is not guilty of misconduct. He did not deliberately violate a company policy "reasonably designed to protect the legitimate business interests of his employer . . . ." <u>Branch</u>, 219 Va. at 611, 249 S.E.2d at 182. He did not violate "the duties and obligations he owes his employer." <u>Id.</u>

Having found employer's policy to be unreasonable, we conclude that appellant's unwillingness to sign the policy document does not constitute misconduct. <u>Cf.</u> <u>Helmick v. Economic Development Corp.</u>, 14 Va. App. 853, 859, 421 S.E.2d 23, 26 (1992) ("An employee's refusal to obey a reasonable directive of his or her employer may constitute misconduct so as to disqualify that employee from unemployment benefits."). Here, the directive to sign and accept the statement of policy was not reasonable because the underlying policy is unreasonable. Therefore, appellant did not commit misconduct in refusing to sign the policy statement.

---

[7] Having found these aspects of the policy are unreasonable, we need not address appellant's argument referencing the deductible.

CONCLUSION

The trial court erred in affirming the decision of the Commission in finding appellant

guilty of misconduct. We reverse the trial court and remand to the trial court with instructions to

remand to the Commission for entry of an award of benefits.[8]

Reversed and remanded.

---

[8] Since we find appellant was not guilty of misconduct, it is unnecessary to address appellant's second question presented, namely, whether the trial court erred in finding there were no mitigating circumstances. See McNamara, 54 Va. App. at 628, 681 S.E.2d at 72 ("If an employer presents *prima facie* evidence of misconduct, the burden shifts to the claimant to prove 'circumstances in mitigation of such conduct.'" (quoting Branch, 219 Va. at 611, 249 S.E.2d at 182)).

- 11 -